United States Court of Appeals,

Eleventh Circuit.

No. 95-8492.

UNITED STATES of America, Plaintiff-Appellee,

v.

Mary Lee BANSHEE, a/k/a Mary Lee Johnson, Defendant-Appellant.

June 18, 1996.

As Amended July 12, 1996.

Appeal from the United States District Court for the Southern District of Georgia. (No. CR294-52-1), Anthony J. Alaimo, Judge.

Before HATCHETT, Circuit Judge, HENDERSON, Senior Circuit Judge, and MILLS[*], District Judge.

*REVISED OPINION*

RICHARD MILLS, District Judge:

Motion to suppress.

Denied below.

Appealed.

We affirm.

## I. FACTS

Following a jury trial in which she was convicted of Possession with Intent to Distribute Cocaine (21 U.S.C. § 841(a)(1)) and violating the Travel Act (18 U.S.C. § 1952(a)(3), Mary Lee Banshee was sentenced to 97 months imprisonment. The only issue on appeal is whether the district court properly denied a motion to suppress cocaine found during a search. Although for different reasons than those employed by the district court, we

---

[*]Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by designation.

conclude the search was lawful.

At approximately 5:00 a.m. on July 31, 1994, Mary Lee Banshee and Lee Ann Johnson were passengers in a rented car being driven by Kenneth Parker northbound on I-95 in Camden County, Georgia. Because the car was being operated with the high-beam lights on when there was traffic in the southbound lane, Deputy Sheriff William Todd stopped the vehicle. The traffic stop was both video and audio taped.[1]

When he stopped the car, Deputy Todd approached and told Parker to get out of the car. Once Parker got out, Deputy Todd asked him for his license. Parker failed to present a license but said he lived in South Carolina and had a license from the District of Columbia. Parker also told Deputy Todd that he and his passengers were enroute from a vacation in Miami, Florida and that his girl friend, Banshee, had rented the car.

While a second officer instituted a computer records check, Deputy Todd approached Banshee who was in the passenger seat. In response to Deputy Todd's questions, Banshee stated that a friend had rented the car and that they were returning from Orlando, Florida where they had gone to Disney World. Banshee indicated that Orlando was as far south as the trio had traveled.

The computer check revealed that Parker did not have a license from either South Carolina or from the District of Columbia—although the problem may have been with Parker's first name. Nevertheless, Deputy Todd only issued a warning ticket,

_____

[1]We commend the use of video tape by police officers. It is a great benefit to the community, the courts, and the police.

instructed Parker that someone else would have to drive, and told Parker he was free to go.

Before Parker could leave, however, Deputy Todd asked Parker for consent to search the car. Parker gave his consent. Thereafter, Parker was quickly frisked and Deputy Todd approached the passengers. Johnson exited the vehicle first. When she did, Deputy Todd asked her if she had any weapons. Johnson replied that she did not. Deputy Todd then directed her, without conducting a frisk, to wait behind the car with Parker.

Deputy Todd then told Banshee to get out of the car. When Banshee got out, Deputy Todd noticed a bulge in her midsection and asked her if she had any weapons or "anything" on her person. Banshee replied that she did not. Deputy Todd then asked her to "turn around and let me see." When she did, Deputy Todd asked: "you ain't got nothing stuck here?" In response, Banshee stated that she was pregnant.

Deputy Todd then remarked to the other officer: "if they got anything she got it on her—she's saying she's pregnant. She, She got it on her ... I can see it, she got it on her. Go ahead start searching [the car]." Thereafter, without frisking Banshee, Deputy Todd directed her to the rear of the rented vehicle and Deputy Todd got in his car.

Once in his car, Deputy Todd got on the radio and asked for a female officer to conduct a search. In so doing, he stated: "man, I think I got another one here, uh, concealed though to where I'm not going to be able to get to it without a female." No female officers, however, were available. Deputy Todd then exited his

vehicle and performed a pat-down of Banshee's mid-section.  After doing so, he directed Parker and Johnson to get on the ground and he handcuffed Banshee.

Once she was handcuffed, Deputy Todd asked Banshee what she was concealing.  Banshee replied that it was something her boy friend had given her.  Deputy Todd then removed one of Banshee's hands from the handcuffs and told her to put the package that she was concealing on the hood of the police car.  Deputy Todd then again handcuffed Banshee and proceeded to open the package which was wrapped in tape.  The package field-tested positive for cocaine and was eventually found to contain 728.7 grams of cocaine.

## II. DISTRICT COURT FINDINGS

After Banshee timely moved to suppress the cocaine, a hearing was held before United States Magistrate Judge James E. Graham. Following the hearing, Magistrate Judge Graham issued a very detailed 22-page recommendation to the district court.  The basis of the recommendation was that:  (1) the stop was not pretextual; (2) the scope of the stop was permissible;  (3) consent to search the car was given;  (4) the pat-down search of Banshee was proper under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);  (5) Deputy Todd was entitled to seize the cocaine package because he believed the package was contraband;  (6) the detention was proper under *Terry;*  and (7) the search of the package was lawful because when Deputy Todd opened the package there was probable cause to arrest Banshee.  The district court accepted the recommendation and denied the motion to suppress.

On appeal, Banshee contends that the stop was pretextual and

that Deputy Todd lacked reasonable suspicion much less probable cause to detain, frisk, and search her. Alternatively, she argues that even if Deputy Todd had a reasonable suspicion, the stop elevated into an unlawful arrest, and the search exceeded anything permitted under *Terry*. Finally, she maintains that the warrantless search of the package was impermissible.

### III. ANALYSIS

We review whether there was reasonable suspicion and probable cause *de novo*. *Ornelas v. United States,* --- U.S. ----, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

After carefully reviewing the record, we find that the findings adopted by the district court on the issues of the alleged pretextual stop and the search of the cocaine package, after it was on the hood of the car, are fully supported by the record and the law. Accordingly, those two issues do not need additional discussion.

The *Terry* related issues are more problematic. Nevertheless, because we find that Deputy Todd had probable cause to conduct a search and that exigent circumstances existed, whether or not the frisk and ensuing search were justifiable pursuant to *Terry* need not be addressed.

"When the police possess probable cause to conduct a search, but because of exigent circumstances, do not have time to obtain a warrant, they may search without a warrant." *United States v. Juarez,* 573 F.2d 267, 274 (5th Cir.), *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978). The rule applies equally to searches of person and property. *See Schmerber v. California,* 384

U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (applying rule to a person).

In this case, based upon the inconsistent statements and the bulge in Banshee's mid-section, we find that Deputy Todd had probable cause to believe a search would uncover evidence of a crime. *See United States v. Thornton,* 733 F.2d 121, 127-28 (D.C.Cir.1984) (discussing what constitutes probable cause in this context). We also find that there were exigent circumstances excusing the need for a warrant. *See Juarez,* 573 F.2d at 275 (finding exigent circumstances when a detained suspect might have left with the contraband if police would have waited to secure a warrant).

Specifically, Deputy Todd had the option of either letting Banshee go or detaining her for a prolonged period of time while he secured a warrant. Accordingly, under the circumstances, the frisk was much less an intrusion than a prolonged detention. *See* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 6.5(c) (1994) ("[w]here, for example, only a very limited search into a specific location is needed, it may be that an immediate but warrantless search of that place is so clearly a lesser intrusion that it may be undertaken in lieu of impoundment of the premises until a warrant can be obtained.").

Accordingly, we hold that Deputy Todd had probable cause to conduct a search and that exigent circumstances excused the need to get a warrant.

We also conclude that the search could be considered a lawful search incident to an arrest. Specifically, we find that the bulge

in Banshee's mid-section, coupled with the inconsistent statements, were sufficient grounds for Deputy Todd to conclude that Banshee was committing a crime. *See United States v. Tomaszewski,* 833 F.2d 1532, 1535 (11th Cir.1987) (finding probable cause to arrest based upon bulge in defendant's clothing); *United States v. Elsoffer,* 671 F.2d 1294, 1299 (11th Cir.1982) (same). Moreover, because there was probable cause for the arrest before the search and the arrest immediately followed the challenged search, the fact that Banshee was not under arrest at the time of the search does not render the search incident to arrest doctrine inapplicable. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564-65, 65 L.Ed.2d 633 (1980); *Thornton,* 733 F.2d at 128 n. 9.

## IV. CONCLUSION

We find that the search was indeed lawful for the reasons stated, and therefore affirm the denial of the motion to suppress.

AFFIRMED.