**UNITED STATES of America,**
**Plaintiff,**

v.

**Ramon Antonio SANCHEZ, Defendant.**

**No. 05–20223–CR.**

United States District Court,
S.D. Florida.

Dec. 15, 2005.

Melanie Allen, Esq., Assistant United States Attorney, Ricardo Del Toro, Esq., Assistant United States Attorney, Miami, FL, for Plaintiffs.

Barry M. Wax, Esq., Law Offices of Barry M. Wax, Miami, FL, for Defendants.

## ORDER DENYING MOTION TO SUPPRESS

MORENO, District Judge.

The defendant seeks to exclude evidence seized from a rental vehicle he was driving on Interstate 95 in North Carolina. Because there was probable cause for the initial stop of the vehicle for a traffic violation and the subsequent detention was brief and not intrusive, the evidence seized from the vehicle is admissible.

### I. THE STOP OF THE VEHICLE

Defendant Ramon Sanchez was driving a rental Ford Excursion Sports Utility Vehicle southbound on I–95 in North Carolina. Co-defendant Ramon Vargas Vasquez was a passenger in the vehicle when it was stopped for repeated improper change of lanes by Sergeant Mark Hart from the Cumberland County Sheriff's Office. The defendant does not challenge the constitutionality of the stop of the car.

■ Traffic stops are seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Because traffic stops are similar to investigative detentions, courts analyze their legality under the standards set out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, an officer's actions during a traffic stop must be reasonably related in scope to the circumstances justifying the stop. *See, e.g., U.S. v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001). Further, the stop must be limited in duration "to the time necessary to effectuate the purpose of the stop." *Id.* (citing *U.S. v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999)).

■ In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), a unanimous Supreme Court held that if a traffic law was violated by the vehicle being stopped, the police officer's subjective motivation for making the stop is irrelevant. Thus, as long as an objective police officer would have stopped the driver for a traffic violation, it does not matter whether Sergeant Hart subjectively wanted to investigate another offense. There is no dispute as to the improper change of lane allegation, therefore the stop of the vehicle was lawful.

### II. SUBSEQUENT BRIEF DETENTION

■ An officer may detain a driver for additional questioning following completion of the traffic stop under two circumstances: (1) if the officer has a reasonable and articulable suspicion of illegal activity or (2) if the encounter has become consensual. *See, e.g., Pruitt*, 174 F.3d at 1220. There is no evidence of consent to search by either the driver or the passenger, thus the Government relies on reasonable suspicion to support the brief detention.

The defendant argues that the officer exceeded both the scope and duration of a constitutional traffic stop when he detained the defendant for further questioning after issuing him a warning and telling him that

he was free to leave. In response, the government argues that the officer had reasonable suspicion that the defendant was engaged in illegal activity, thus justifying the further investigative detention. Additionally, the government argues that the defendant's privacy interests were not violated because the traffic stop was only extended five minutes until the drug sniffing dog arrived, which constitutes a *de minimis* delay.

Because the government has not argued that the additional questioning was the result of a consensual encounter, the relevant question is whether the officer had reasonable suspicion of illegal activity when he summoned the defendant for questioning as he walked back to his SUV.

■■ The Eleventh Circuit has not addressed whether reasonable suspicion developed prior to the conclusion of the traffic stop are relevant in assessing whether an officer had reasonable suspicion justifying further detention. At least three other circuits, however, have ruled that "termination of a traffic stop does not effectively erase the objectively reasonable suspicions developed by a police officer during the traffic stop." *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir.2004) (finding that officer had reasonable suspicion to question defendant after returning license and registration, delivering citation and telling defendant to "have a safe trip"); *see also United States v. Foreman*, 369 F.3d 776 (4th Cir.2004); *United States v. Williams*, 271 F.3d 1262, 1271 (10th Cir.2001). This Court agrees with these circuits and holds that a determination of whether reasonable suspicion exists should include the facts during the traffic encounter irrespective of the officer's words that imply he is going to give the driver "a break" and let him go with a warning. The termination of the traffic stop does not erase the reasonable suspicion developed prior to the conclusion of the stop.

■ The detaining officer, Sergeant Hart, testified credibly at the evidentiary hearing on the circumstances of the detention. Sergeant Hart asked the defendant for his driver's license and as the defendant complied, noticed that his hands were trembling. Sgt. Hart asked the defendant to meet him at the rear of the Ford Excursion (a large Sports Utility Vehicle) where the police car dashboard camera recorded various parts of the traffic stop.

Sergeant Hart asked the defendant to sit in the front passenger seat of the patrol car while he ran a check of the defendant's license. Sergeant Hart asked who owned the Ford Excursion with a Florida license plate and the defendant replied that it was rented and the rental agreement was in the glove compartment of the vehicle. Sergeant Hart then walked over to the right side of the Ford Excursion and asked the passenger, co-defendant Ramon Vargas Vasquez, for the rental agreement. Sergeant Hart testified that the passenger was also very nervous and his hands were shaking as he looked for the rental agreement in the glove compartment. The videotape submitted as evidence shows only the encounter between the officer and the driver, but the conversations with the passenger can also be heard. While he did this, Sergeant Hart asked the passenger where they were coming from. The passenger replied "New York." Sergeant Hart asked what city, and he said "New Jersey." Sergeant Hart asked how many days they had been in New Jersey and the passenger replied "three days." Sergeant Hart asked which city in New Jersey, and the passenger hesitated, and could not answer the question. The passenger found the rental agreement and handed it to Sergeant Hart, who noticed that the Ford Excursion was rented for only one day. The passenger also told Sergeant Hart that they were in Trenton, New Jersey,

which incidentally is not near the New York border.

Sergeant Hart then returned to the patrol car and entered the defendant's license information into the computer. Sergeant Hart asked defendant Sanchez, the driver, where they were coming from, and he replied that they had spent one week in New Jersey visiting family. He then said it was three days. The defendant also said that he was in "Parkingston," New Jersey and that he had been a police officer in the canine unit in the Dominican Republic. Sergeant Hart testified credibly that during this exchange the defendant appeared nervous and was breathing heavily. The videotape depicting the exchange between the driver and the officer neither supports nor contradicts the officer's testimony on the issue of appearing nervous. The noise of the heavy traffic on I–95 precludes anyone from hearing whether the driver is breathing heavily. However, the officer's testimony was not contradicted by any witness at the hearing. In any event, the Court assumes that most lawabiding drivers would be somewhat nervous upon being stopped by a police officer. Thus evidence of nervousness alone is insufficient to detain a driver.

Sergeant Hart told the defendant that he was going to give him a break and let him go. According to the time stamped on the patrol car's dashboard video recording, the entire traffic stop until this point had taken approximately nine minutes. As the defendant was returning to his vehicle, Sergeant Hart, after telling the defendant to go on his way, approached him and asked him a few additional questions on whether he had any weapons, illegal drugs, or large amounts of money. The defendant said no to each of these questions. When asked if he had more than five thousand dollars, the defendant replied that he did not, as he had not won the lottery. Sergeant Hart then asked the defendant for permission to search the vehicle. At that point, the defendant said in Spanish that he did not understand ("no comprendo"). Then, Sergeant Hart asked the passenger, co-defendant Vargas Vasquez, whose proficiency in English was better,[1] for permission to search and the passenger asked in response, "why?" and said, "I don't know."

The Court finds that neither the driver nor the passenger gave consent to the search based on those responses. However, Sergeant Hart asked if Vargas Vasquez minded if a canine (K–9 unit) came to check. He responded that he did not mind.

Approximately four to five minutes later, canine handler Corporal G. Floyd arrived at the scene and ran his drug detecting dog around the exterior of the Ford Excursion.[2] The dog alerted to the smell of narcotics along the exterior and trunk of the vehicle. Based on the dog alert,[3] Corporal Floyd and Sergeant Hart searched the contents of the trunk, finding $25,488

1. The passenger Vargas–Vasquez has entered a guilty plea without the necessity of a Spanish interpreter who was available at the plea colloquy.

2. Sergeant Hart did open the "trunk" of the SUV before the dog arrived. The "trunk" of the vehicle, as is typical with SUVs, has a large window allowing one to clearly see the contents of the trunk prior to opening it. Sergeant Hart also asked whose bags were in the open trunk.

3. In *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), the Supreme Court validated a dog sniff during a routine traffic stop. The Court reiterated its ruling in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), that a well trained narcotics detection dog does not compromise any legitimate privacy interest.

in cash wrapped in bundles hidden in two cellular telephone boxes and $42,050 in cash hidden in Vargas Vasquez's clothing. This search lasted approximately five minutes.

When confronted with the $25,488 found in his belongings, the defendant said, "I found the money." Asked where, he replied "in New York." When asked why he had not told Sergeant Hart about the money, he replied, "because I found the money, it is not mine." Vargas Vasquez later admitted that the $42,050 found in his belongings was his. Later, the defendant also admitted that the $25,488 found in the phone boxes was his and that he got the money from working.

The defendant argues that the extension of the valid traffic stop was made without reasonable suspicion and violative of the Constitution, relying on *United States v. Boyce*, 351 F.3d 1102 (11th Cir.2003). The government counters that the brief investigative detention was based on sufficient reasonable suspicion consistent with stops permitted under *Terry*. Specifically, the government relies on *United States v. Hernandez*, 418 F.3d 1206 (11th Cir.2005), and *United States v. Banshee*, 91 F.3d 99 (11th Cir.1996).

### III. BANSHEE, BOYCE and HERNANDEZ

In *Banshee*, the Eleventh Circuit found that inconsistent statements about destination of the trip and who rented the vehicle, coupled with a bulge in the defendant's mid-section justified the search of the individual. 91 F.3d at 101–02. In this case, the Court considers the inconsistent statements made by the driver (Sanchez) and passenger (Vargas Vasquez) to be sufficient to arouse reasonable suspicion. Although defendant's counsel argued that a language problem resulted in the inconsistencies, the Court, after viewing the videotape and hearing the conversations, and combined with Sergeant Hart's unrebutted testimony, concludes that the statements were indeed inconsistent. There is no question that the driver's English was limited, but the inflection of his voice, as well as his demeanor on the tape confirm the officer's testimony on the inconsistencies between the statements given by the driver and passenger. The driver's knowledge of English was sufficient to advise Sergeant Hart that he had been a canine officer in the Dominican Republic and to indicate that he did not understand when asked for consent to search. Not knowing whether one is in Trenton, New Jersey (near the Pennsylvania border) or in New York coupled by the contradiction of whether the stay was 3 or 7 days would raise the suspicions of a reasonable officer.

Defendant relies on *Boyce*, in which the court held that police lacked reasonable suspicion to extend a traffic stop for 12 minutes to call in a canine unit that conducted an inspection. 351 F.3d at 1107–11. As pointed out by the Government's response, *Boyce* is distinguishable from the instant case for several reasons. First, the *Boyce* court found that the district court clearly erred in finding that Boyce was unusually nervous during the traffic stop because the patrol car video recording refuted this allegation. The videotape here is inconclusive on that issue.

Second, although not consenting to the initial search of the vehicle, the passenger did agree to wait for the canine unit, which arrived only a few minutes later. Third, the *Boyce* court suggested that, had the factors found by the district court existed, they may have raised reasonable suspicion justifying an investigative stop. Here those factors (one day expired rental agreement, nervousness and inconsistent statements) do exist. The factors listed in *Boyce* are fewer and less compelling than the factors that are present here.

Fourth, the amount of time that the traffic stop was extended in *Boyce* was 12 minutes, more than twice the time involved in the instant case. In *United States v. Gil,* 204 F.3d 1347 (11th Cir.2000), the undersigned's denial of a motion to suppress was affirmed, finding that a 75 minute, handcuffed detention was reasonable under *Terry.* The *Gil* court relied on *United States v. Sharpe* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), to examine whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place. The Court must consider the totality of the circumstances, "including the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *United States v. Hardy,* 855 F.2d 753, 759 (11th Cir.1988).

In this case the duration of the detention was short (only minutes) and the intrusiveness of the detention was minimal (no handcuffs, no guns pointed, only conversation on a public highway with a camera taping the encounter before the dog alert) and consistent with the stop for improper change of lane. The fact that the officer announced that he was letting the driver go immediately before asking the final questions does not erase the conclusion that he already had objective reasonable suspicion.

In *Hernandez,* the court held that a traffic stop did not result in an unconstitutional seizure when the police officer became suspicious in response to questioning and detained the defendant for 17 minutes during questioning before conducting a consensual search of the vehicle, which uncovered narcotics in a hidden compartment of the vehicle. With regard to the detention, the court noted the following circumstances which supported reasonable suspicion on the part of the officer who

stopped that defendant's vehicle for speeding at 3:02 a.m. on an Alabama highway: (1) the implausible excuse for speeding (looking for a restroom for the driver's diarrhea when the vehicle had just missed a lighted exit with restroom facilities in rural Alabama where the defendant was unlikely to find another rest stop); (2) empty food containers in the vehicle, consistent with the practice of drug traffickers who do not want to stop for food and leave their vehicle unattended; (3) discrepancies in the stories about the trip's length and purpose; (4) abnormal nervousness in the detainee; (5) nonstop travel at night in severe weather; (6) lack of knowledge of the trip's destination; (7) travel between two main source cities for narcotics and (8) minimal luggage. *Id.* at 1211.

The facts of this case are not as strong in support of the government's position as they were in *Hernandez.* Nevertheless, the Eleventh Circuit noted that the length of a detention, not the unrelatedness of the questioning to the reason for the stop, is what makes a detention unreasonable. "When an officer is, for instance, looking at a driver's license or waiting for a computer check of registration, he lawfully can at about the same time also ask questions - even questions not strictly related to the traffic stop." *Id.* at 1209 n. 3.

This is precisely what Sergeant Hart did when he asked a few more questions for a few more seconds regarding drugs and money, after his announcement that he would let the defendants leave. The *Hernandez* court noted that a 17 minute stop would not, standing alone, likely be deemed so long as to be unreasonable, even if it were not justified by the evasive answers to police questioning. "No evidence in the record shows that seventeen minutes is significantly longer than the range of normal for a traffic stop for a moving violation. Even *if* seventeen min-

utes is some minutes longer that the norm, we question whether the Fourth Amendment's prohibition of unreasonable seizures is concerned with such trifling amounts of time, when the seizure was caused at the outset by an apparent violation of the law." *Id.* at 1212 n. 7 (emphasis in original).

Likewise, this brief detention which yielded inconsistent answers on destination by the occupants of a large SUV, with a Florida license plate and one-day expired car rental, improperly changing lanes on a known drug corridor and trembling hands by the occupants rose to the level of articulable reasonable suspicion to justify the brief investigative detention prior to the canine arrival. Once the dog provided a positive alert a few minutes later, the reasonable suspicion reached the level of probable cause to search the vehicle consistent with the Fourth Amendment.

Therefore, the motion to suppress the money found and the statements provided during the traffic stop is DENIED.