In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2227

JOHN OCHANA,

*Plaintiff-Appellant*,

*v.*

FERNANDO FLORES and ANTHONY SCHWOCHER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 7869—**James H. Alesia**, *Judge.*

ARGUED JANUARY 6, 2003—DECIDED OCTOBER 17, 2003

Before POSNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* John Ochana fell asleep at the wheel of his car at a busy intersection in Chicago during rush hour. Fortunately for Ochana, police officers arrived in time to escort him safely out of the car. Unfortunately for Ochana, the officers also conducted a search of his car and found an unmarked bag of white powder and a mysterious bottle labeled in Spanish. Notwithstanding his protestations of "it's not what you think," Ochana was brought in on traffic and criminal charges and spent the better part of the weekend in jail. Laboratory test results

for the white powder later came back negative, and all criminal charges were dropped. Ochana subsequently brought this action against the officers pursuant to 42 U.S.C. § 1983, claiming that they had violated his Fourth Amendment rights by unlawfully searching and arresting him without probable cause. The district court granted summary judgment in favor of the officers, and Ochana appealed. We affirm.

## I

Around 6:00 p.m. on Friday, June 23, 2000, Ochana was at the wheel of the first vehicle stopped at the light on Kostner Avenue where it intersects with Irving Park Road in Chicago, Illinois. Two Chicago police officers, Defendants Fernando Flores and Anthony Schwocher, were in their squad car, which was located a few cars behind Ochana's car. The light at the intersection changed, but Ochana's car did not respond, and people started honking their horns. Someone coming from the opposite direction on Kostner told the officers that there was a car blocking traffic, and that the driver was either asleep at the wheel or passed out.

The officers activated their emergency equipment and pulled up in their squad car next to Ochana's car. Schwocher went over to Ochana's car and observed that Ochana was asleep behind the wheel with his head down. The gear of Ochana's car was in "drive," and his foot was on the brake. Ochana's window was open, and Schwocher attempted to wake him by calling to him, but Ochana did not respond. Schwocher reached in through the open window of Ochana's car, shifted the gear into "park," and then attempted to wake him by shaking him. Even then, Ochana did not wake up entirely; instead, he kept waking up and then nodding off to sleep again. It was not until the officers knocked on the door of his car that Ochana woke up fully,

startled. Ochana thought that he had dozed off only for a few minutes. He did not recall that cars behind him were honking, that cars were passing in the opposite lane of traffic, that the officers had reached in and shifted the gear into "park," or that they had tried to wake him.

The officers ordered Ochana to get out of his car. From that point onward, most of the facts are disputed. According to the officers, they physically had to help carry Ochana out of the car; according to Ochana, he was able to get out of the car by himself. The officers escorted Ochana to the rear of the vehicles and asked to see his driver's license. The officers testified that Ochana was still groggy and incoherent, but Ochana maintains that he was alert and awake. Ochana, however, testified that he did not remember whether he pulled out his driver's license. Schwocher testified that because Ochana was not responding to his request for the driver's license, he had to reach into Ochana's pocket and pull it out himself. The officers asked Ochana why he was sleeping, and Ochana responded only that he was tired.

While Ochana was behind the vehicles with Schwocher, Flores looked into the passenger compartment of Ochana's car. Flores testified that he saw a white substance in a clear, unlabeled bag sticking out more than halfway from inside an open, unzipped backpack. Ochana, in contrast, testified that his backpack was closed. The clear, unlabeled bag was a Ziplock sandwich bag; inside it was a clear plastic scoop and a white powdery substance. According to Ochana, the white powder also had yellow flecks and a lemon-lime scent. The officers did not taste or smell the powder, as they should have done according to Department policy. Based on its appearance and packaging, and also taking Ochana's impaired condition into account, the officers believed that the powder was either cocaine or heroin. Flores removed the backpack from Ochana's car and further discovered a brown

bottle of "Cynomel" that appeared to be a prescription drug. The bottle was labeled in Spanish without any prescription information on it.

Ochana allegedly told the officers that the white powder was "creatine" (a popular muscle builder), but according to the officers, "He couldn't say really anything. He just said that it's not what you think it is." The officers told Ochana that they were going to take him in so that they could identify the white powder. The officers did not know what was in the bottle, but they believed that it was a prescription drug that Ochana had obtained illegally.

The officers handcuffed Ochana and took him to the police station. Ochana's car was towed and impounded. Later at the police station, Ochana explained to officers what creatine was—a dietary supplement usually purchased at health food stores to help build muscles, and a non-controlled substance. Moreover, Ochana explained to the officers that the brown bottle contained his thyroid medication. Ochana had obtained it while in Mexico as a substitute for the thyroid medication for which he had a valid prescription in the United States. Ochana asked the defendants to call Walgreens to verify his prescription. Officer Flores called a pharmacist, and was allegedly told that Cynomel was a prescription drug, a steroid, and a controlled substance.

Based on this incident, Ochana was charged with obstruction of traffic, in violation of the City of Chicago Municipal Code, CHICAGO, IL, CODE § 9-40-130 (1999); possession of a controlled substance in violation of 720 Ill. Comp. Stat. 570/402 (1998); and forging or altering a prescription, in violation of 720 Ill. Comp. Stat. 570/406 (1998). He spent the next two nights in jail, and was released on Sunday morning after posting a $100,000 bond, $1,000 of which was nonrefundable. Subsequent attorneys' fees to clear Ochana of the pending charges added up to another $1,000.

On July 21, 2000, both criminal charges were dismissed after laboratory test results for the white powder came back negative. On the obstruction of traffic charge, Ochana received supervision and was assessed a fifty-dollar fine.

In this § 1983 action, Ochana makes two principal allegations against the officers: first, that they searched his vehicle and backpack without probable cause, and second, that they arrested him without probable cause. The district court granted summary judgment in favor of the officers, finding that the search was incident to a custodial arrest, and that the subsequent arrest was warranted by probable cause. Ochana challenges the district court's grant of summary judgment, in addition to various evidentiary rulings.

## II

We review *de novo* a district court's decision to grant summary judgment, *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1010 (7th Cir. 2002), drawing all reasonable inferences in the light most favorable to the non-moving party, here Ochana. See *Casteel v. Pieschek*, 3 F.3d 1050, 1052 (7th Cir. 1993).

### A. Legality of Search

Defendants raise three independent arguments to support the legality of the search: that (1) it was incident to a custodial arrest; (2) there was probable cause to search for evidence of drugs or intoxicating agent; and (3) the search was inevitable. The district court granted summary judgment based on the first of those theories: that the search was incident to a custodial arrest. We may affirm the district court's ruling on any basis supported by the record. *Id.* Construing the record in the light most favorable to Ochana, we depart from the district court's analysis but ultimately arrive at the same conclusion.

Generally, it is legal to search a vehicle incident to a lawful custodial arrest, including the contents of any closed containers found inside, in order to disarm the suspect or preserve evidence of a crime. See *New York v. Belton*, 453 U.S. 454, 460 (1981). It is not, however, permissible to conduct a *Belton* search pursuant to a traffic citation alone. *Knowles v. Iowa*, 525 U.S. 113 (1998). In *Knowles*, the Court underscored that a *Belton* search may not be conducted as part of a mere traffic stop, even if there is probable cause for the traffic stop, or probable cause to arrest the driver for the traffic violation. In order to conduct a *Belton* search, the occupant of the vehicle must actually be held under custodial arrest. *Id.* at 118.

Construing the record in the light most favorable to Ochana, we find insufficient evidence that Ochana was under custodial arrest at the time of the search. A suspect is under custodial arrest when "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Ienco,* 182 F.3d 517, 523 (7th Cir. 1999). For example, in *Smith v. Ball State Univ.*, 295 F.3d 763, 768-69 (7th Cir. 2002), we found that the removal and detention of an unconscious person at the wheel of a running vehicle was merely investigatory and was not equivalent to a custodial arrest, even if the officers reasonably believed that the person was impaired by drugs or alcohol. Similarly, in this case, even if Officers Flores and Schwocher reasonably believed that Ochana was intoxicated, a reasonable person in Ochana's shoes would have thought that he was merely being detained for a traffic citation. Ochana had no reason to believe that he was under custodial arrest for any offense. He was not told that he was under arrest; he was not handcuffed or frisked; and no sobriety test was conducted. Officers Flores and Schwocher did not ask Ochana any questions that would signal to a reasonable person that

he was suspected of having committed any other offense. For these reasons, we find insufficient evidence in the summary judgment record to support a conclusion as a matter of law that this search was incident to a custodial arrest.

Nonetheless, we agree with the district court that summary judgment was proper because we find that there was probable cause to search the vehicle for evidence of drugs or other intoxicating agents. Unlike searches incident to a custodial arrest, which turn on the objective belief of a reasonable person in the suspect's position, see *Ienco,* 182 F.3d at 523, probable cause determinations turn on the objective belief of a reasonable person in the officers' position. See *Marshall v. Teske*, 284 F.3d 765, 770 (7th Cir. 2002).

Even limiting ourselves to the undisputed facts that took place before Ochana emerged from his vehicle, the record permits only the conclusion that the officers had reason to believe that Ochana was unlawfully impaired. Ochana did not just doze off; he was passed out for several minutes at an intersection during rush hour; his window was open and cars were honking at him. He admits that he recalls none of this. He did not wake up, even though an officer shook him, verbally tried to wake him, and reached in and changed the gear to "park." At that point in time, the officers had probable cause to search Ochana's car for an intoxicating agent. See *Smith*, 295 F.3d at 769-70 (officers had probable cause to search the car of an unconscious driver for intoxicating agents, even though the driver was actually in diabetic shock). Thus, the warrantless search of Ochana's car (and the backpack inside, whether it was open or not) for evidence of an intoxicating agent was not unconstitutional. See *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997) (Fourth Amendment permits the warrantless search of a vehicle when there is "probable cause

to believe that the vehicle contains contraband or evidence of criminality"); *United States v. Ross,* 456 U.S. 798, 818-19 (1982) (rule applies to closed containers inside the car).

For these reasons, we find that the officers' search of Ochana's car was constitutional. We therefore need not, and do not, reach the question whether the search was inevitable.

### B. Legality of Arrest

The presence of probable cause to arrest Ochana for any offense with which he was charged (or any closely-related charge) also bars his unlawful arrest claim under § 1983. See *Jones v. Webb*, 45 F.3d 178, 183 (7th Cir. 1995); *Calusinski v. Kruger*, 24 F.3d 931, 935-36 (7th Cir. 1994); *Marshall*, 284 F.3d at 771; *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993). Here, Ochana does not challenge his obstruction of traffic charge. On the obstruction of traffic charge alone, the officers could lawfully have arrested Ochana. See *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (Fourth Amendment permits custodial arrests for non-jailable traffic offenses). Because there was probable cause to arrest Ochana for obstruction of traffic (or committing a closely-related offense of driving under the influence, driving recklessly, or driving negligently), the district court found that his unlawful arrest claim could not succeed.

Ochana argues, however, that the presence of probable cause to arrest him for a mere traffic violation should not bar his unlawful arrest claim. He asserts that only the presence of probable cause to arrest for a more serious offense, such as possession of cocaine or forgery or alteration of a prescription, should bar a § 1983 unlawful arrest claim. In Ochana's view, adopting the district court's rule opens the door to a parade of horribles, by giving free rein to the police to arrest drivers for trumped-up criminal

offenses without probable cause, so long as there is probable cause to believe that a minor traffic violation was also committed.

Ochana's argument fails for at least two reasons. If we were persuaded that Ochana would not have been arrested on the traffic violation alone, then we might address the issue of whether probable cause for *any* charge—no matter how minor or unlikely to have been the basis of the custodial arrest—bars a § 1983 unlawful arrest claim. We decline to reach that issue today, because those facts are not before us. It seems clear that Ochana, who had passed out and appeared drugged (at least prior to emerging from his vehicle), would not have been allowed back into his car and onto the road by any reasonable officer.

Even if at this juncture we were to believe that Ochana was sufficiently alert to be allowed back into his car, there was probable cause to arrest Ochana for a more serious offense—possession of cocaine. Cocaine can come in a yellowish color, see, *e.g., United States v. Linton*, 235 F.3d 328, 330 (7th Cir. 2000), and its scent can be masked, see, *e.g. United States v. Koenig*, 856 F.2d 843, 845 (7th Cir. 1988). Here the appearance of the powder was not all that roused the officers' suspicion. The officers were also entitled to take into account the powder's packaging, Ochana's impaired behavior, and his failure to give a coherent explanation of what was in the bag at the time of the arrest. Taken together, these facts were enough to establish probable cause. The fact that Ochana later gave a coherent explanation for the powder does not alter the probable cause determination. See *Garcia v. City of Chicago*, 24 F.3d 966, 969-70 (7th Cir. 1994).

### C. Other Evidentiary Rulings

Finally, Ochana challenges a number of evidentiary rulings made by the district court that he believes affected

its summary judgment ruling. We review these only for abuse of discretion. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

The district court denied Ochana's motion *in limine* to bar any reference to the officers' subjective belief that they had probable cause, stating that the officers' subjective belief of probable cause is "central" to this case. Ochana is correct that the district court misstated the governing law. It is well-established that an arresting officer's personal knowledge of facts sufficient to constitute probable cause is significant, but an arresting officer's subjective beliefs are not relevant. *Whren v. United States,* 517 U.S. 806, 813 (1996). The determination whether a sufficient legal basis existed for an arrest is an objective one. Therefore, the subjective belief of the officers here that they had probable cause is not "central" to any issue before us.

Although the district court was incorrect to place significant weight on the officers' subjective belief that they had probable cause, its error was harmless. There was probable cause to arrest Ochana based on the facts known to the officers, and their testimony did indicate what information they actually possessed prior to making the arrest.

Ochana's other challenges are equally unavailing. It was not an abuse of discretion for the court to grant the officers' motion *in limine* to bar the negative laboratory results or the disposition of the underlying criminal charges, because these were not facts within the officers' knowledge at the time of the arrest and thus could not be considered even at the summary judgment stage. Moreover, the district court did not abuse its discretion in refusing to take judicial notice of the nature of Ochana's thyroid medications (Synthroid, Cynomel, and Cytomel), because this information was also not known to the officers at the time of the arrest. Even if the district court erred, Ochana cannot demonstrate prejudice. Harmless errors do not warrant

reversal. See *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1148 (7th Cir. 1993).

## III

For the reasons discussed, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*