# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued  January 25, 2007   Decided April 17, 2007

No. 05-3047

UNITED STATES OF AMERICA,
APPELLEE

v.

RONALD POWELL,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00164-01)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant.  With her on the briefs was *A. J. Kramer*, Federal Public Defender.  *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Suzanne C. Nyland*, Assistant U.S. Attorney, argued the cause for appellee.  With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III*, Assistant U.S. Attorney.

Before: GINSBURG, *Chief Judge*, and SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL, GARLAND, BROWN, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

Dissenting opinion filed by *Circuit Judge* ROGERS.

GINSBURG, *Chief Judge*: Ronald T. Powell challenged the district court's order denying his motion to suppress evidence of the gun and ammunition found in the back seat of his car. A jury convicted Powell of being a felon in possession of the gun and ammunition, in violation of 18 U.S.C. § 922(g)(1). Powell appealed the district court's order and a divided panel of this court reversed his conviction as having been based upon the fruits of an unlawful search. The panel majority reasoned that even when the police have probable cause to arrest a suspect, they may not conduct a warrantless search incident to arrest before taking the suspect into custody. *See United States v. Powell*, 451 F.3d 862, 863 (D.C. Cir. 2006).

Upon the Government's motion, the full court vacated that decision and granted rehearing en banc. Concluding this case is controlled by *Rawlings v. Kentucky*, 448 U.S. 98 (1980), we now affirm the order of the district court and hold the search of Powell's car was conducted incident to Powell's arrest. Accordingly, unlike the panel, we go on to consider whether the officers had reason to believe Powell was a "recent occupant" of the vehicle and conclude they did, wherefore the search was lawful.

## I. Background

One evening at approximately 9:00 p.m. three Metropolitan Police officers were riding in an unmarked police car in the vicinity of 1700 West Virginia Avenue, NE, an industrial area, when they saw Powell and another man standing and urinating to the rear of and a "few feet" from a parked car. The officers "pulled [their] vehicle toward" the men and came to a stop. Officers Masalona and Trudy got out and walked toward the two men while Officer Jones, who had seen a third person sitting in

the front passenger seat, approached the driver's side of the car. As the officers approached, one of the men outside the car said, "[W]e were just going to a friend's house and we had to go, man. We had to go."

Officers Masalona and Trudy detained the two men outside the car because "they were going to be placed under arrest" for urinating in public. Meanwhile, Officer Jones leant through the open window on the driver's side of the vehicle and shined his flashlight inside the car, where he saw three clear cups containing a yellowish liquid, two in the cupholders of an armrest in the front seat and one in an armrest in the back seat. Based upon the smell, Officer Jones concluded the liquid was "alcoholic ... in nature." Upon cross-examination Officer Jones conceded that "a portion" of his "head and ... upper body" were inside the vehicle when he first saw the cups.

Officer Jones directed the passenger to get out of the car with the intention of arresting him for possession of an open container of alcohol in a vehicle upon a public way. *See* D.C. Code § 25-1001(a)(2) (2001). He then searched the vehicle and found on the back seat a capped cognac bottle with a "small portion" of cognac inside and a backpack. Inside the backpack he found an Intertech 9 semi-automatic pistol with 23 rounds in the magazine and one round in the chamber, as well as a certificate of title for the vehicle and a credit card receipt, both in the name of Ronald Powell. Upon finding the gun, Officer Jones said to Officer Masalona, "[H]ook him up," which was the officers' signal "that something serious is happening right now" and the suspects should be "placed in handcuffs." The men were taken into custody and variously charged with a firearms violation, possession of an open container of alcohol, and urinating in public.

A grand jury indicted Powell on a single count of being a felon in possession of a firearm and of ammunition, in violation of 18 U.S.C. § 922(g)(1). Powell moved to suppress the physical evidence found in his car as the fruits of an unlawful search. The Government opposed on the ground that, because the police had probable cause to arrest the two men for urinating in public and probable cause to arrest the occupant of the vehicle for possession of an open container of alcohol, the search of the car was conducted incident to an arrest and therefore was lawful under *New York v. Belton*, 453 U.S. 454, 460 (1981).

At the hearing on Powell's motion the prosecutor represented that Officer Jones had seen and smelled the alcohol before he leant his head into the vehicle. Defense counsel contended Powell had neither seen nor smelled the alcohol until after he had "physically" entered the vehicle "with his body." The district court upheld the search on the ground that Officer Jones had seen the cups of yellowish liquid in the beam of his flashlight before he leant into the vehicle. This conclusion was directly contrary to Officer Jones's testimony, as the Government has since conceded in its brief for this appeal. Officer Jones's search, and his consequent discovery of the gun and ammunition in the backpack, therefore cannot be justified on the ground that the open containers of alcohol were in plain view; "a search not justified when it is begun cannot be used to elicit evidence with which to justify the search after the fact." *United States v. Spinner*, 475 F.3d 356, 359 n.* (D.C. Cir. 2007) (citations omitted). The search of the car can be justified, if at all, only if it was incident to the arrest of Powell and the other man for urinating in public.

Powell was convicted by a jury and sentenced to 46 months in prison, to be followed by three years of supervised release. He appealed and a divided panel of this Court reversed the district court's order denying Powell's motion to suppress,

holding the police may not conduct a warrantless search of the passenger compartment of a car incident to arrest "before informing [an occupant of the car] that he was under arrest or restraining his movement in a manner that would lead a reasonable person in his position to believe he was under arrest." *Powell*, 451 F.3d at 864. The full court vacated the panel's decision in order to consider whether "the search of the car was lawfully conducted as a search incident to Powell's arrest."

## II. Analysis

Powell argues the search was unlawful because he "had no reason to believe he was being arrested at the time of the search" and the "search incident to arrest" exception to the warrant requirement of the Fourth Amendment to the Constitution of the United States does not apply to a search conducted prior either to the announcement of a formal arrest or to the suspect being taken into custody. We reject that view because we believe this case is controlled by *Rawlings*.

## A. *Rawlings*

In *Rawlings* the Supreme Court held the police may search a suspect whom they have probable cause to arrest if the "formal arrest follow[s] quickly on the heels of the challenged search," 448 U.S. at 111. The Court was quite clear in stating that, assuming such proximity in time, it is not "particularly important that the search preceded the arrest rather than vice versa." *Id.* This court applied the Supreme Court's clear teaching in *United States v. Riley*, 351 F.3d 1265, 1269 (D.C. Cir. 2003) (where "police had probable cause to arrest" before search, it was "of no import that the search came before the actual arrest"). So, too, did the Ninth Circuit in *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) ("So long as an arrest that follows a search is supported by probable cause independent

of the fruits of the search, the precise timing of the search is not critical" (citations omitted)), and the Tenth Circuit in *United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999) ("A legitimate 'search incident to arrest' need not take place after the arrest" (citation omitted)). Indeed, every circuit that has considered the question — save one — has concluded that a search incident to arrest may precede the arrest. *See, e.g.*, *United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997); *United States v. Donaldson*, 793 F.2d 498, 503 (2d Cir. 1986); *United States v. Currence*, 446 F.3d 554, 557 (4th Cir. 2006); *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987); *United States v. Montgomery*, 377 F.3d 582, 588 (6th Cir. 2004); *United States v. Ilazi*, 730 F.2d 1120, 1126-27 (8th Cir. 1984); *Smith*, 389 F.3d at 951; *Lugo*, 170 F.3d at 1003; *United States v. Banshee*, 91 F.3d 99, 102 (11th Cir. 1996). Only the Seventh Circuit has held that a *Belton* search may not precede a custodial arrest, but it did so in an opinion that, like the briefs then before it, betrayed no awareness of the Supreme Court's holding in *Rawlings*. *See Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003).

Applying the teaching of *Rawlings* to the facts of this case, we must uphold Officer Jones's search of the car. Powell acknowledges the officers had probable cause to arrest him and his companion for urinating in public before they searched his car. *See* D.C. Code § 22-1321 (2001); *Scott v. United States*, 878 A.2d 486, 488 (D.C. 2005). Indeed, Officer Jones testified that the officers "detain[ed]" the two men because "they were going to be placed under arrest" for "[u]rinating in public." Immediately following the search, the two were indeed handcuffed and formally placed under arrest for public urination as well as for the firearms violation brought to light by the search. As in *Rawlings*, that is, "the formal arrest followed quickly on the heels of the challenged search." 448 U.S. at 111. Therefore, as in *Riley*, because "the police had probable cause

to arrest [before the search], the search was valid as one incident to arrest."  351 F.3d at 1269.

B.  Custodial Arrest Versus Formal Arrest

Powell argues that *Rawlings* applies only in cases where the challenged search was preceded by a custodial arrest.  Noting, as did the Seventh Circuit in *Ochana*, that a custodial arrest takes place "when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest," 347 F.3d at 270, Powell apparently reads our decision in *Riley* to mean that a search may precede "the formal announcement of arrest" if and only if it follows the functionally more important custodial arrest.

In cases involving a search incident to arrest neither we nor the Supreme Court have previously expanded upon the distinction between a "custodial" and a "formal" arrest, but the Supreme Court did at least advert to such a distinction in *Rawlings*, 448 U.S. at 111 (search may lawfully precede arrest so long as "formal arrest follow[s] quickly on [its] heels"), and the taxonomy is, of course, familiar from the *Miranda* line of cases, *see, e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) ("[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest.  If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." (internal quotation marks and citations omitted)).

Powell argues — and it is possible, though ultimately inconsequential — that the suspects in *Rawlings* and *Riley* were under "custodial" but not "formal" arrest when they were

searched. In *Riley* police officers ordered the suspect to dismount his moped and searched his sock only after they had surrounded him in such a way that he "couldn't have moved without actually making contact with" one of them. *Riley*, 351 F.3d at 1267. The court noted the seizure (of the suspect's person) that preceded the search might have been deemed an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 (1968), but for some reason that "elude[d]" the court, the Government conceded the initial seizure was not a *Terry* stop. 351 F.3d at 1267. The court accordingly treated the encounter as an "arrest" from the moment the officers "converged on the moped." *Id.* The suspect was therefore under custodial arrest, or so the argument goes, before the challenged search took place.

In *Rawlings*, the suspect was "detained" at the residence he was visiting and, unless he would consent to a body search, was not permitted to leave for the 45 minutes it took the police to obtain a search warrant. 448 U.S. at 100. When an officer returned with the warrant, Rawlings admitted the drugs found in another guest's purse were his. *Id.* at 100-01. Having thus obtained probable cause to arrest Rawlings, the officers first searched him and then placed him under arrest. *Id.* at 101. The Supreme Court expressly reserved the question whether the temporary detention of the occupants of the house was a lawful seizure that was "less intrusive than a traditional arrest," *id.* at 110 & n.5, that is, something less than a custodial arrest, but the Court assumed for the sake of the argument it was an "illegal detention," *id.* at 106.

Whether the suspects in *Rawlings* and *Riley* were under custodial arrest when they were searched, however, is of no moment. Neither the Supreme Court in *Rawlings* nor this court in *Riley* suggested the lawfulness of the search turned upon the suspect being in custody before he was searched. On the

contrary, the Supreme Court in *Rawlings* said that the "formal arrest" may follow "quickly on the heels of the challenged search," *id.* at 111, and this court in *Riley* similarly held it was "of no import that the search came before the actual arrest" because the "actual arrest" followed quickly after the search, 351 F.3d at 1269 — exactly as happened in this case.

Powell and our dissenting colleague nonetheless seem to find implicit in these decisions the requirement that the search follow the custodial arrest because to hold otherwise would sever the search-incident-to-arrest exception to the warrant requirement from its two historical rationales — namely, protection of the officer's safety and the preservation of evidence, *see, e.g.*, *Belton*, 453 U.S. at 457 — which are not triggered until an encounter ripens into an arrest, that is, until the suspect is taken into custody. But that is not correct. If anything, both concerns are greater before the police have taken a suspect into custody than they are thereafter. *See, e.g.*, *Thornton v. United States*, 541 U.S. 615, 618 (2004) (upholding search under *Belton* where officer "handcuffed petitioner, informed him that he was under arrest, and placed him in the back seat of the patrol car" before searching his vehicle); *cf. id.* at 627-28 (Scalia, J., concurring in judgment) (noting cases upholding search after suspect is handcuffed and secured in back of squad car "are legion" and mordantly criticizing application of *Belton* to suspects who no longer pose a danger to police). By searching the suspect before they arrest him, the officers can secure any weapon he might otherwise use to resist arrest or any evidence he might otherwise destroy.

In this case the presence of another person in the searched vehicle illustrates the need for police who have probable cause to make an arrest in some circumstances, in the interest of safety, to conduct a search before making the arrest. Here the police approached two suspects in proximity to a probable

associate who, for all they knew, had access to a weapon. *Cf. Maryland v. Buie*, 494 U.S. 325, 334 (1990) (holding that, incident to an arrest in a home, officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched").

Powell and our dissenting colleague also contend our decision is inconsistent with *Knowles v. Iowa*, 525 U.S. 113 (1998) (holding an officer may not conduct a search incident to arrest when, although the officer has probable cause to make an arrest, he issues a citation instead of arresting the suspect). But that is not correct either. Had the officers failed to arrest Powell and merely issued him a citation, then indeed the search would be invalid under *Knowles*. 525 U.S. at 117 ("The threat to officer safety from issuing a traffic citation ... is a good deal less than in the case of a custodial arrest"). That, of course, is not what happened, and we do not say that having probable cause to arrest is by itself sufficient to bring a search within the *Belton* exception to the warrant requirement. Rather, it is the "fact of the arrest" that makes all the difference. *Id.* (quoting *United States v. Robinson*, 414 U.S. 218, 234 n.5 (1973) ("The danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty")); *see also Washington v. Chrisman*, 455 U.S. 1, 7 (1982) ("Every arrest must be presumed to present a risk of danger to the arresting officer"). As we have recently noted: "The key point in *Knowles* ... was not that the officer had a lawful ground for arrest upon which he did not rely, but that he did not arrest the defendant at all." *United States v. Bookhardt*, 277 F.3d 558, 566 (D.C. Cir. 2002).

Two additional considerations impel our conclusion that *Rawlings* controls this case. The first is the Supreme Court's teaching that in this area of the law bright-line rules are

necessary. *See, e.g.*, *Thornton v. United States*, 541 U.S. at 623 ("need for a clear rule ... justifies the sort of generalization which *Belton* enunciated"). The second is that, even if *Knowles* could be taken by implication to call *Rawlings* into question, we are not at liberty to disregard the Supreme Court's straightforward statement that it is not "particularly important that the search preceded the arrest rather than vice versa," 448 U.S. at 111. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions").

C.  Recent Occupant/*Thornton*

Because we conclude the search in this case was "incident to [an] arrest," as the Supreme Court has explicated that phrase, we must go on to answer the question whether the officers had reason to believe Powell or his companion was a "recent occupant" of the vehicle. *See Thornton*, 541 U.S. at 622 ("*Belton* allows police to search the passenger compartment of a vehicle incident to a lawful custodial arrest of both 'occupants' and 'recent occupants'" (quoting *Belton*, 453 U.S. at 460)). We conclude they did. Although Officer Jones testified he did not "know" Powell or the other man was a recent occupant, a reasonable police officer would have had good reason to believe as much: indeed, the only reasonable inference, upon finding two men urinating at night in an industrial area a "few feet" from a car, the only occupant of which was sitting in a passenger seat, is that the two men were recent occupants of the car.

### III.  Conclusion

Because the search of the car was a lawful search incident to Powell's arrest for urinating in public and the officers had reason to believe Powell was a "recent occupant" of the vehicle, the district court properly denied Powell's motion to suppress. The judgment of conviction is therefore

*Affirmed.*

ROGERS, *Circuit Judge*, dissenting: The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause." In a line of cases stretching back to *United States v. Robinson*, 414 U.S. 218 (1973), the Supreme Court, when considering the moments surrounding an arrest, has carefully balanced a citizen's right to privacy against police officer safety. The court today upsets that balance and spins the "search incident to arrest" exception to the Fourth Amendment's warrant requirement in a new direction — and away from more than a quarter-century of Supreme Court precedent.

When construing the Fourth Amendment, "[t]he touchstone . . . is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam). That reasonableness "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers,'" *Maryland v. Wilson*, 519 U.S. 408, 412 (1997). In the context of the Fourth Amendment's warrant requirement, the Supreme Court has held without exception that the right of privacy is "too precious to entrust to those whose job is the detection of crime and the arrest of criminals," *Chimel v. California*, 395 U.S. 752, 761 (1969) (quoting *McDonald v. United States*, 355 U.S. 451, 456 (1948)), and has authorized only "narrow and well-delineated exceptions" such as a warrantless search when a suspect is in police custody to protect the safety of the officer and to preserve evidence, *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999); *California v. Acevedo*, 500 U.S. 505, 580 (1991).

In *Robinson*, the Supreme Court determined that an

individual's Fourth Amendment right of privacy is overcome only at the point when the police make a custodial arrest, 414 U.S. at 234; *see Chimel*, 395 U.S. at 762-63. In striking this balance, then-Justice Rehnquist wrote for the Court that the "extended exposure which follows the taking of a suspect into custody and transporting him to the police station" endangers the officer. *Robinson*, 414 U.S. at 234-35. The Court further explained: "It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under the Amendment." *Id.* at 236.

In subsequent decisions, the Supreme Court has adhered to this analysis: custodial arrest establishes the exigencies allowing for an exception to the warrant requirement. In the seminal case of *New York v. Belton*, 453 U.S. 454 (1981), where the Court established a bright-line rule for law enforcement officers to follow in conducting searches incident to a prior arrest, *id.* at 459; *see also id.* at 463 (Brennan, J., dissenting), the Court explained that "when a policeman *has made* a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," including the contents of any containers found therein, *id.* at 460 (emphasis added). More recently, in *Knowles v. Iowa*, 525 U.S. 113 (1998), Chief Justice Rehnquist writing for a unanimous Court reaffirmed its commitment to the *Robinson* balance, stating that "the danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty," *id.* at 117, and reiterating the two historical rationales for allowing the exception to the Fourth Amendment's warrant requirement: "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial," *id.* at

117-18 (citing *Robinson*, 414 U.S. at 234).

Today, the court abandons *Robinson* and its progeny in favor of a new rule: Whenever a police officer has probable cause to arrest a suspect, the officer may conduct a search incident to the possibility of a later arrest so long as the officer later ratifies the search by making the arrest. *See* Op. at 7. This rule finds no basis in Supreme Court precedent or in logic and imperils the constitutional right against unwarranted intrusions. I respectfully dissent.

The Supreme Court has made clear that mere probable cause to arrest a suspect is insufficient to justify the intrusion of a full-fledged search. In *Knowles*, the Court rejected extending the exception under the *Robinson* and *Belton* rationale to searches incident to traffic citations, where state law provided that the officer *could* have arrested the suspect if he so desired, *see* 525 U.S. at 114-15 & n.1. The Court emphasized in *Knowles* that while concerns for officer safety are "both legitimate and weighty," *id.* at 117 (internal quotation marks omitted), because "'[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest,'" *id.* (quoting *Robinson*, 414 U.S. at 234 n.5), the issuance of a citation could justify no more than ordering the driver and passengers out of the car and performing a *Terry*[1] patdown, *id.* at 118. The Court made clear that the concern for officer safety stemming from a citation "does not by itself justify the often considerably greater intrusion attending a full field-type search." *Id.* at 117. The Court explicitly rejected the government's request "to extend th[e] 'bright-line rule' [under *Robinson*] to a situation where concern for officer safety is not present to the same extent [as when a suspect is taken into custody] and the concern for the

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

destruction or loss of evidence is not present at all." *Id.* at 119.

In a situation strikingly similar to *Knowles*, the court today insists that the opposite result is justified because Powell was *ultimately* arrested, whereas Knowles was not. *See* Op. at 11. Certainly, it is not enough that the officers had grounds to arrest Powell; *Robinson* says so explicitly, *see* 414 U.S. at 234 n.5. Moreover, if the "threat to officer safety" is what justifies the search of a lawfully parked car several feet from Powell, then the threat must exist when the search occurs. It tortures all principles of reasoned logic to conclude that somehow the risk to officers at the time of the search is retroactively heightened based on the officer's subsequently communicated decision to arrest. Consistent with *Robinson* and *Knowles*, the officer-safety rationale justifies abridging a suspect's Fourth Amendment rights only if, *at the time of the search*, the suspect is under custodial arrest. The risks attendant to the "fact of the arrest" ripen only when a suspect is sufficiently on notice that he is no longer free to leave. Contrary to the court's suggestion, Op. at 9, the Supreme Court has made both the sequencing of events and the distinction between a lawful custodial arrest and a formal arrest explicit in addressing the warrant exception. *E.g.*, *Knowles*, 525 U.S. at 114; *Belton*, 453 U.S. at 460; *Robinson*, 414 U.S. at 233-34.

The court further maintains that the concerns for officer safety are greater *before* the officer completes the arrest. *See* Op. at 9. But this assertion rewrites Supreme Court jurisprudence and does so without even so much as an evidentiary proffer by the government, much less findings of fact from the district court. The court's analysis of police safety in explaining the exigencies that trigger the warrant exception has never been adopted by the Supreme Court as it runs entirely counter to the *Robinson* and *Belton* line of cases. Moreover, the court cannot explain why, if the concern for officer safety is

elevated because of the *possibility* that the officer will arrest the suspect, before the suspect knows the officer's intentions, it matters whether the officer subsequently makes an arrest. Instead, the court chooses to ignore the Fourth Amendment balance carefully struck by the Supreme Court over the decades, unmooring the rationales from their historical groundings at the behest of a concurring opinion that, in fact, leaves intact the *Robinson* balance based on a prior custodial arrest and argues for limiting the scope of the subsequent search in a manner that would not support Powell's arrest for a firearms violation. *See* Op. at 9 (citing *Thornton v. United States*, 541 U.S. 615, 617, 631-32 (2004) (Scalia, J., with whom Ginsburg, J., joins, concurring in the judgment) (proposing to "limit *Belton* searches to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle")); *see also Thornton*, 541 U.S. at 634 (Stevens, J., with whom Souter, J., joins, dissenting).

The only benefit of the court's new approach is that it purports to establish a bright line. But just because a line is bright does not make it defensible — it would be a "bright-line rule," for example, to say "police officers may do whatever they want." In this instance, the court's bright-line rule, Op. at 11, is particularly unwise as a matter of policy. First, there is no bright line. An officer cannot know the permissible scope of a search until the basis for the arrest is known, which it is not when he conducts the search. Thus an officer who has all the evidence needed to make an arrest will proceed to conduct an unrelated search, as occurred in *Knowles*, 525 U.S. at 488. A later warrantless arrest, based on any discovered contraband, will be condoned under the court's new rule as long as the officer also arrests the nearby person for the unrelated offense for which the officer had probable cause to arrest prior to the search. Along the way, the protections afforded by the Fourth Amendment are lost.

Second, the court's new rule creates perverse incentives for law enforcement that run contrary to the policy determinations made by the Supreme Court in recognizing narrow exceptions to the warrant requirement. By authorizing the *post hoc* ratification of unconstitutional conduct, the court's approach encourages law enforcement officers to use minor pretextual arrestable offenses — ones for which, in practice, an offender would rarely be arrested — to justify fishing expeditions for evidence unrelated to the offense for which the officer originally had probable cause to arrest. If the officer happens to find evidence of a serious law violation, the officer can make the arrest and everything will have been proper; if the officer finds nothing and lets the offender off, courts of law are unlikely to have the opportunity to ensure that police conduct is consonant with the Fourth Amendment. The record in the instant case demonstrates that a police officer who first searches and then arrests will testify, when pressed, that he intended, before the search, to arrest the suspect who was "detained." Not even critics of *Belton*'s scope-of-search rule propose this outcome. *See Thornton*, 541 U.S. at 632 (Scalia, J., with whom Ginsburg, J., joins, concurring in the judgment); *id.* at 634 (Stevens, J., with whom Souter, J. joins, dissenting). The bright line established by the Supreme Court in *Robinson* and in *Belton* and its progeny is thus overturned in favor of a rule allowing virtually standardless warrantless searches. The Supreme Court has never endorsed such an approach, even for cars. *See, e.g.*, *Cady v. Dombrowski*, 413 U.S. 433 (1973).

Instead of following the long line of cases beginning at least with *Robinson*, the court holds that *Rawlings v. Kentucky*, 448 U.S. 98 (1980), is dispositive of Powell's appeal. Op. at 2, 5. In *Rawlings*, then-Justice Rehnquist, writing for the Court, upheld a search "as incident to [Rawlings'] *formal* arrest." *Id.* at 111 (emphasis added). Rawlings and a companion were detained by the police for approximately forty-five minutes

7

before Rawlings was searched and then formally arrested. *See id.* at 107, 110-11. The Court concluded that "[w]here the *formal* arrest followed quickly on the heels of the challenged search of [his] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Id*. at 111 (emphasis added). The court today latches onto this language and states that "[a]pplying the teaching of *Rawlings* to the facts of this case, we must uphold Officer Jones' search of the car. . . . As in *Rawlings*, that is, the 'the formal arrest followed quickly on the heels of the challenged search.'" Op. at 6-7 (quoting 448 U.S. at 111). But the court cannot explain why the Supreme Court in *Rawlings* emphasized that only the *formal* arrest followed the challenged search. The court can reach its result only by ignoring both the language of *Rawlings* and its factual context, which shows that the holding was not a wide-ranging abandonment of the *Robinson* balance but rather a straightforward application of existing law. Doing so distorts the rule of *Rodriguez de Quijas v. Shearson/American Express, Inc*., 490 U.S. 477, 484 (1989), that a lower court should follow a Supreme Court decision that directly controls. Op. at 11.

To state the obvious, the holding of an opinion can be understood only in the context of the case that was before the court. *See Coleman v. Thompson*, 501 U.S. 722, 735-36 (1991); *Phelps v. United States*, 421 U.S. 330, 333-34 (1975); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C Cir. 1998) (en banc). The context defines the case or controversy that the court is entitled to resolve. In *Rawlings*, the defendant not only was in police custody prior to the search of his person by the police — he had been given his *Miranda* warnings.[2] *Rawlings*, 448 U.S. at 100. During the forty-five minutes of detention while the police were seeking a search warrant for unlawful drugs, the

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

police had informed Rawlings that he could leave the apartment only if he consented to a body search. *Id*. The police had come to the apartment with an arrest warrant for drug violations by another man and seen marijuana seeds in plain view on a mantel. *Id*. The fact that Rawlings was in police custody — the police instructions and the *Miranda* warnings eliminated any ambiguity about the intentions of the police — before the search of his person created the exigencies underlying the exception to the warrant requirement discussed in *Robinson*. Moreover, before Rawlings was searched, the police had obtained a search warrant for the apartment. It was in this context — a context without ambiguity, in which Rawlings was clearly under custodial arrest — that the Supreme Court made its statement that it was "not particularly important" whether Rawlings was searched before his "*formal* arrest" by the police. *Id*. at 111 (emphasis added). The Court's reference to "formal arrest" signals that it recognized that Rawlings was in custody prior to the search. After all, the Court had just completed an extended discussion of Rawlings' suppression claim based on his having been unlawfully detained for forty-five minutes. *Id*. at 104-06. The evidence in *Rawlings* thus avoided the conundrum presented to law enforcement under the court's new rule because Rawlings was already in police custody before they searched his person and any further search of the premises occurred pursuant to a search warrant for the apartment. *Id*. at 100-01 .

It is telling that the court can point to no instance in which the Supreme Court has adopted its out-of-context interpretation of *Rawlings*. The court today chooses to believe that the Supreme Court's use of the modifier "formal" was a mere superfluity because the Supreme Court did not speak at length about the difference between custodial and formal arrest. Op. at 7-8. But the context of the one-paragraph discussion speaks otherwise and the court can point to no indication that the Supreme Court intended to depart so dramatically from its

previous approach. The Supreme Court's decisions subsequent to *Rawlings*, in *Belton* and its progeny, adhere to the *Robinson* balance even when citing *Rawlings* and require that the suspect be in lawful police custody prior to a warrantless search. Such a momentous departure from decades of precedent would not be hidden. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Nor would so significant a turnabout be subsequently ignored by the Court when, as in *Belton*, 453 U.S. at 459, the Court was formulating a "straightforward rule" for the police.

Moreover, the court today points to no instance in which the Supreme Court has used the phrase "incident to" to mean anything other than a search that has followed a lawful custodial arrest; the formal arrest may follow the search, but for the warrant exception to apply, the police must have unambiguously taken prior action such that a reasonable person in the suspect's position would understand that he was in police custody and that formal arrest would follow shortly. *See Belton*, 453 U.S. at 461; *Robinson*, 414 U.S. at 226 (quoting *Chimel*, 395 U.S. at 762-63); *id.* at 232 (quoting *People v. Chiagles*, 142 N.E. 583, 584 (N.Y. 1923) (Brandeis, J.)); *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003). While the Supreme Court has shifted ground over the years on the scope of the area that the police may reasonably search incident to an arrest, *compare Smith v. Ohio*, 494 U.S. 541, 543 (1990), *with Chimel*, 395 U.S. 752, it has adhered to the position that the suspect's prior lawful custody by the police creates the exigencies justifying the exception to the warrant requirement. For example, in *Smith*, 494 U.S. at 543, the Supreme Court cited *Rawlings* for the proposition that "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification." Ignored by this court today, the Supreme Court in *Rawlings*, in rejecting Rawlings' challenge to the lawfulness of the search of his person, referenced only cases in which police custody served as the

precondition to triggering the warrant exception.[3]

---

[3] Each of the cases cited in *Rawlings*, 448 U.S. at 111, involved police action that clearly signaled to the suspect that he was in police custody prior to the search:

In *Bailey v. United States*, 389 F.2d 305 (D.C. Cir. 1967), the police had spotted a car matching a "look-out" for a car wanted in connection with a robbery and assault, forced Bailey's car to the side of the road while two other police cars blocked his car at the front and rear, and an officer, "apparently with gun in hand, ordered the occupants to sit still and keep their hands in plain sight." *Id*. at 307.

In *Cupp v. Murphy*, 412 U.S. 291 (1973), Murphy had voluntarily come to the police station upon learning of his estranged wife's murder. Suspecting Murphy might be implicated, the police asked Murphy if they could take a sampling from his fingernails. *See id.* at 292. When Murphy refused, the police took the sampling over his objection. Murphy "was not formally 'arrested' until approximately a month later." *Id*. at 294. The Court noted that at the time the sampling was taken Murphy, "was obviously aware of the detectives' suspicions [that he had murdered his wife]." *Id*. at 296. That was sufficient, the Court concluded, to motivate him "to attempt to destroy any incriminating evidence," and in order to preserve evidence, the Court held that the police were justified "in subjecting him to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails." *Id.*

In *United States v. Gorman*, 355 F.2d 151 (2d Cir. 1965), the district court found that the police officer approached two known drug addicts (Gorman and Roche) whom he suspected of using narcotics, saw Gorman injecting himself with a hypodermic needle, and ordered the men to stay in the car where they were seated; the officer then placed Gorman under arrest, and thereafter searched the car. Rejecting Roche's claim that he had not consented to the car search, the Second Circuit injected dictum into its opinion, considering an alternative basis not argued by the government, for holding that the search was reasonable because the police had probable cause to arrest Roche

The court overstates the support in the circuit cases, Op. at 6, for in evaluating the reasonableness of police action, the circuit cases involved direct communication by the police that a suspect was not free to leave and would be arrested, and thus do not align with the court's extrapolation of *Rawlings*.[4]

---

although the formal arrest was postponed. *Id*. at 160.

The final case cited in *Rawlings* involved a plain view seizure. In *United States v. Brown*, 463 F.2d 949 (D.C. Cir. 1972), a police officer observed two men in a telephone both and suspected a drug transaction was taking place. The officer approached and identified himself, and upon noticing Brown's eyes were glassy concluded he was high on narcotics. The officer seized an envelope sticking out of Brown's shirt pocket — an "envelope of the type in which he had found narcotics on previous occasions" — and found capsules with white power and "formally notified [Brown] that he was under arrest." *Id*. at 950. The district court ruled that an envelope was in plain view; on appeal, this court cited *Bailey* and *Gorman*, upholding the search even though Brown "ha[d] not formally been placed under arrest." *Id.*

[4] The Seventh Circuit, in considering this issue in *Ochana*, 347 F.3d at 270, held that "[i]n order to conduct a *Belton* search, the occupant of the vehicle must actually be held under custodial arrest." As the court's opinion notes, Op. at 6, however, since the Supreme Court's decision in *Knowles*, other circuits to consider this issue have reached different conclusions by focusing on the language in *Rawlings*. What the court fails to acknowledge, however, is that the evidence in those cases, and in the pre-*Knowles* cases, is very different from the instant case and that those courts' citations to *Rawlings* reflect that *Rawlings* speaks to searches of suspects who are under custodial arrest. *See United States v. Currence*, 446 F.3d 554, 557 (4th Cir. 2006) (prior to search, police approached suspect identified by confidential informant, told him to get off his bicycle, and upon learning of an outstanding warrant for his arrest, handcuffed him; police then searched bicycle and after finding drugs in the bicycle placed defendant under formal arrest); *United States v. Smith*, 389

F.3d 944, 951 (9th Cir. 2004) (prior to search, driver pulled over for speeding was unable to produce license and registration or identification and was told by the police to get out of car and walk to patrol car; upon determining driver did not have valid driver's license and registration and had given the police a false social security number, police patted down driver and searched the car); *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (prior to search, police told defendant she was in "investigative custody" and she was given *Miranda* warnings); *United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999) (prior to search, driver of speeding car stopped by police was told he was not free to go and told several times that he would be arrested if he could not produce any identification; driver did not produce identification and when motor vehicle records indicated driver had not been issued a license, police patted down driver and searched passenger compartment of car); *United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997) (prior to search of car, driver pulled over for speeding consented to the search of the car trunk and made incriminating admissions that drugs were inside the passenger compartment); *United States v. Banshee*, 91 F.3d 99, 102 (11th Cir. 1996) (search upheld under *Terry* in view of probable cause to arrest and exigent circumstances — no female officer available to search female passenger; dictum citing *Rawlings* where, prior to search, passenger in stopped car was asked by police whether she had "anything" on her person and what she had "stuck" around her waist; when passenger claimed to be pregnant, passenger was frisked and then handcuffed); *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987) (prior to search, defendant matching witness's description of money passer was stopped by police and asked to show paper money and upon production, police frisked defendant for weapons; upon feeling crumpled paper in pocket and defendant's refusal to produce it, police officer reached into pocket and retrieved mimeographed copy of twenty dollar bill; Fifth Circuit viewed defendant as being under custodial arrest at time of search); *United States v. Donaldson*, 793 F.2d 498, 503 (2d Cir. 1986) (prior to search, police confronted defendant with his culpability for harboring a fugitive, based on statement of fugitive's father that fugitive was in defendant's apartment, and placed defendant under custodial arrest;

13

Heretofore, this court's precedent has reflected the limits of the language in *Rawlings* on which the court today relies. For example, in *United States v. Riley*, 351 F.3d 1265 (D.C. Cir. 2003), three police officers surrounded Riley, whom the police had probable cause to arrest for selling drugs, and ordered him to get off his moped. *Id*. at 1267. At that point one of the officers noticed a bulge in Riley's sock and reached down and pulled out a package from his sock. *Id*. As the court today notes, this court held, citing *Rawlings*, that under the circumstances, it mattered little that Riley's arrest followed the search of his person. *Id*. at 1269. What the court today fails to acknowledge is the court's recognition in *Riley* that there was a prior custodial arrest when the police ordered Riley to get off his moped and surrounded him so he could not move; the court stated "it seems clear that by [the time of the search] a reasonable person in Riley's shoes would have believed he was not free to leave." *Id.*

---

defendant formally arrested after search of apartment revealed fugitive); *United States v. Ilazi*, 730 F.2d 1120, 1126-27 (8th Cir. 1984) (prior to search, police made investigatory stops of two men without luggage deplaning at airport and told them they were under arrest; subsequent search of their boots and underwear revealed drugs).

To the extent the circuits speak in broad terms in citing *Rawlings*, the factual context of these cases paints a very different picture than is suggested by the court's string citation. Notably, the opinions from the Fourth, Ninth and Tenth Circuits do not indicate any awareness of *Knowles* — it is absent from their analysis. The Sixth Circuit, without explanation, simply indicates that *Knowles* may not be fully consistent with *Rawlings*. *Montgomery*, 377 F.3d at 586. The Seventh Circuit, in contrast, considered the effect of *Knowles* with respect to the timing of *Belton* searches.

Unlike *Rawlings* or *Riley*, there is no evidence that Powell or the other urinating man was under custodial arrest when the police searched the car, nor any such finding by the district court.[5] The court relies on Officer Jones' conclusory statement at the suppression hearing that two other officers were detaining Powell and the other man in order to arrest them for urinating in public. Op. at 6. Although Officer Jones asserted that the two men were not free to leave and that they were going to be arrested for urinating in public, he offered no factual description or temporal identification whatsoever to support his bald assertions, much less to explain in what manner the two men

[5] The absence of both evidence and district court findings is explained by the government's changing theories to justify the search of the car and the seizure of the contents of the backpack on the rear seat. *See Powell v. United States*, 451 F.3d 862 (D.C. Cir. 2006) (vacated upon grant of rehearing en banc). In the district court, the government argued that the search of the car was incident to the arrest of a third man, who was sitting in the car, because open containers of alcohol were in plain view inside the car. Hence, the government offered evidence focusing on the third man and the search of the car after he was removed from the car by the police. On appeal, the government confessed error because the district court's finding of a lawful search based on plain view was clearly erroneous, being directly contrary to the officer's testimony. The government then changed its theory, contending that the existence of probable cause to arrest Powell for disorderly conduct for public urination was alone sufficient to uphold the search of the car. *Id.* at 866-67 (D.C. Cir. 2006). The government relied on *Rawlings* and *Riley*, 351 F.3d at 1269. After the court unanimously rejected that theory, the government before the en banc court has adopted the panel dissent's theory, relying on *Rawlings*, that an arrest must, in fact, occur based on the probable cause existing prior to the search of the car. *Id.* at 873.

were "detained" prior to the search of the car. In fact, Jones admitted that prior to the search of the car, unlike in *Rawlings*, *see supra* note 3 and in the circuit cases cited by the court, *see supra* note 4, the police had not said anything to the two men; nor had the men been frisked or handcuffed. Jones also admitted that prior to the search the police had no information about the two urinating men or about the car, and no information linking the men to the car. There is no evidence that either Powell or the other man said anything to suggest that they knew, prior to the car search, that they were in police custody. The evidence thus shows only that three police officers saw two men urinating in public in a non-residential area late at night, they got out of their car, and two officers began approaching the two men from the rear while the third officer approached a car in which a third man was sitting and searched it. The conclusory testimony — they were "detained" — affords no way for an appellate court to determine, particularly in the absence of any district court findings of fact, whether Powell was, like Rawlings and Riley, in police custody prior to the search of the car, much less whether he understood prior to the search that he was going to be arrested for urinating in public. To so conclude would require rank speculation at the appellate level.

The Supreme Court has never suggested that a mere conversation with a police officer, much less an officer's approach, suffices to trigger either of the historical exceptions to the warrant requirement. Absent police action that would alert a suspect that he is in custody, thereby providing a motive for a suspect to resist the police or to destroy evidence, even the existence of probable cause does not suffice. *See Knowles*, 525 U.S. at 116-17. For all we know from the barren evidentiary record in this case, the two officers who approached the urinating men as the other officer searched the car simply said: "Don't you know you can't pee in public?" just like an officer might say to a pedestrian, "Don't you know you can't cross the

street when the light is red?" or to the driver of a car, "Don't you know you can't go through a stop sign without stopping?" Unlike the statements by the police in the cases cited in *Rawlings*, *see supra* note 3, and in the circuit cases, *supra* note 4, such statements do not indicate that the officer has decided to take any further police action, either by issuing a citation or by taking the person into custody or by arresting him. Neither does police silence. Moreover, as Powell suggests, there is nothing to indicate the police would have arrested the two men solely for urinating in public when to do so would have entailed transporting them for booking and several hours of paperwork. The government proffered no evidence, much less statistical data, to support an inference that the officers would have arrested Powell in the absence of the fruits of the car search.

Alternatively, the court attempts to justify the search of the car because the presence of a passenger indicated the need for the police to search the car before taking anyone into custody or making a formal arrest. Op. at 10. The third man is a red herring insofar as neither the government nor the court purports to justify the search on the basis of *Terry*, 392 U.S. 1. In any event, the car was lawfully parked a few feet in front of the two urinating men. The police had no information about the car or any of the men, nor any indication that the men were armed or dangerous. The police never saw Powell or the second man in the car. The police did not speak with even one of the three men before a police officer searched the car. As the Supreme Court observed in *Knowles*, 525 U.S. at 117-18, there were lawful ways for officers to protect themselves and to search for weapons. Perhaps the district court would have found that the police officers could have justified having the third man exit the car, *see Wilson*, 519 U.S. at 414, and conducting a patdown search, *see Terry*, 392 U.S. 1. But there is no evidence here that the police had any reason to suspect that the passenger was dangerous or that the car itself contained contraband or

dangerous weapons. *Cf. Cady*, 413 U.S. at 446-47. The government offered no evidence to suggest that removing the passenger would not have addressed any concern about police safety; nor has it made that argument on appeal. As the Supreme Court indicated in *Maryland v. Buie*, 494 U.S. 325, 334 (1990), where the police arrived on the scene with an arrest warrant for Buie, "there must be articulable facts which . . . would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id*. The Court took pains to note that:

> despite the danger that inheres in on-the-street encounters and the need for police to act quickly for their own safety, the Court in *Terry* did not adopt a bright-line rule authorizing frisks for weapons in all confrontational encounters. Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted.

*Buie*, 494 U.S. at 334 n.2. The district court here made no such finding and this court has recently reaffirmed that not every potentially dangerous situation confronting the police can justify a warrantless search of an occupied car. *See United States v. Spinner*, 475 F.3d 356 (D.C. Cir. 2007).

In *Thornton* the Supreme Court held, embracing the *Robinson* balance, 541 U.S. at 620-21, that the *Belton* exception applies regardless of whether the suspect was in the car before the police took him into custody or had been seen in the car by the police and recently exited the car, *id.* at 621-22. There is no district court finding that the police had reasonable grounds to conclude that Powell was a recent occupant of the lawfully

parked car. But even assuming an arrest for disorderly conduct[6] would justify the search of a lawfully parked car several feet away, and even assuming *Thornton* can be stretched to fit the evidence (or lack thereof) here, *see* Op. at 11; *but see United States v. Mapp*, 476 F.3d 1012, 1019 (D.C. Cir. 2007), the court ignores the requirements of the Fourth Amendment for searching cars and for triggering the warrant exception, requirements underlying the government's concession that the search of the car in Powell's case could not be justified on the basis of the fruits of the search. *See supra* note 5. *See also Thornton*, 541 U.S. at 624 ("[L]ower court decisions now seem to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel v. California*, 395 U.S. 752 (1969)" [adopted in *Robinson*.]) (O'Connor, J., concurring in part).

Accordingly, with no consideration of the history that gave rise to the Fourth Amendment's proscription of "unreasonable searches and seizures," *see Chimel*, 395 U.S. at 760-61, and no acknowledgment that *Rawlings* embraces the balance struck by the Supreme Court in *Robinson* between privacy interests and police safety as carried forward in *Belton* and its progeny, the court today leaves the venerable balance embodied in the exception to the warrant requirement in tatters. The "few specifically established and well-delineated exceptions" to the warrant requirement, *Acevedo*, 500 U.S. at 580; *Katz v. United States*, 389 U.S. 347, 357 (1967), based on the *Robinson* balance were neither expanded nor abandoned in *Rawlings*. Because the government bears the burden of showing that an exception to the warrant requirement applies, *see Robinson*, 414 U.S. at 243;

---

[6] Urinating in public is a violation of the District of Columbia's disorderly conduct statute, D.C. CODE § 22-1321 (2001); *Scott v. United States*, 878 A.2d 486, 487-88 (D.C. 2005).

*United States v. Most*, 876 F.2d 191, 193 (D.C. Cir. 1989), and it has failed to show that Powell, like the defendant in *Rawlings*, was in police custody prior to the search of the car, even assuming his connection to the car, the conviction cannot stand.