# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 21, 2006          Decided January 16, 2007

No. 05-3160

UNITED STATES OF AMERICA,
APPELLEE

v.

RICHARD SPINNER, JR.,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00556-01)

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*John P. Mannarino*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III*, Assistant U.S. Attorney.

Before: GINSBURG, *Chief Judge*, and SENTELLE and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*:   Richard Spinner, Jr. pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  He argues the weapon found in his truck should have been suppressed because police officers detained him without a reasonable, articulable suspicion of his being involved in a crime or, alternatively, because after frisking him (with his consent) they searched his vehicle without his consent and without a reasonable suspicion that it contained a weapon.  Assuming without deciding that Spinner's parking violation justified his initial detention, we agree with Spinner that the police did not have the reasonable suspicion he was armed and dangerous necessary to justify their search of his vehicle.  We therefore reverse the district court's order denying Spinner's motion to suppress and remand the record to the district court.

## I.  Background

The undisputed police testimony at the hearing held on Spinner's motion to suppress evidence is as follows.   On November 26, 2004 Metropolitan Police officers were driving an unmarked police car through an area of Washington, D.C. in which there had recently been "several narcotics arrests."  The officers pulled into an alley and there saw Spinner walking toward a parked Chevy Tahoe.  As police approached, Spinner opened the door behind the driver's seat and got into the back seat of the truck.  The police pulled up in order to "advise him that the vehicle needed to be moved because he couldn't park there" and motioned Spinner to roll down his window.

One of the officers testified:

At that point, [Spinner] looked at us.  I guess he realized

who we were, and he kept eye contact but his body dipped, the right side of his body dipped towards the center of the back of the vehicle. He just kept looking at us and he was going like this as if he was struggling with something or trying to conceal something.

The officer explained his concern as follows: "We don't know if he's trying to get something, we don't know if there's something in there that could possibly harm us. So I go to exit the vehicle." Spinner then got out of the truck and "walk[ed] to the back of the vehicle [leaving] the door wide open."

An officer told Spinner he could not park there and Spinner told him he had come to move the car, which the officers found puzzling: "And we were just thinking, well, if you were going to move it, why did you get in the back seat?" Spinner "was a little nervous at that point," so an officer asked if he had a weapon on him. Spinner said no and consented to a frisk of his person but, when asked if he had anything illegal in the truck and for consent to search it, said no and denied consent.

Spinner was then "getting really nervous" and one of the officers "felt that there was something that had been concealed in the vehicle. We felt that it was something that possibly could harm us." One officer then shined a flashlight into the Tahoe, the back door of which was still open, and "noticed that there was a small drawer at the back of the center console all the way at the bottom which was partially open, just a small bit, maybe a quarter of an inch." "[B]elieving that [Spinner] had stuck something there, [an officer] went directly to that area and did a limited search and just opened that drawer, and there was a handgun in the drawer." The police then arrested Spinner.

After Spinner was indicted for one count of being a felon in possession of a firearm, he moved to suppress the physical

evidence found in his vehicle, arguing the police lacked a reasonable suspicion upon which either to detain him or to search his vehicle. The district court thought it a "very close case" but ultimately denied the motion. The court first held the stop was justified under *Terry v. Ohio*, 392 U.S. 1 (1968), because "a traffic violation is a legitimate reason to stop somebody." The court then concluded the officers had a reasonable suspicion, arising from the totality of the circumstances — namely, Spinner's "odd" explanation, his "furtive movements," and his nervousness — to justify frisking Spinner and searching the truck.

Spinner entered a conditional plea of guilty, preserving his right to appeal. The district court sentenced him to 33 months in prison to be followed by three years of supervised release.

## II. Analysis

Spinner argues again on appeal that the physical evidence found in his vehicle should have been suppressed as the product of a search made in violation of the Fourth Amendment to the Constitution of the United States. We review de novo the district court's determination that the police had a reasonable, articulable suspicion justifying the search. *See United States v. Broadie*, 452 F.3d 875, 879 (D.C. Cir. 2006).

A. The Stop

Spinner argues first that the police did not have a reasonable, articulable suspicion that criminal activity was "afoot" when they stopped him. *See Terry*, 392 U.S. at 30. The Government responds that under *Whren v. United States*, 517 U.S. 806, 810 (1996), the parking violation gave the officers probable cause to stop Spinner, making an analysis under *Terry* irrelevant. Spinner concedes that *Whren* authorizes the police

to stop a driver based upon "probable cause to believe that the driver is committing a traffic violation," but argues that *Whren* is not applicable to a mere parking violation.

The circuits that have considered the question whether a parking violation justifies a *Terry* stop have found no legally meaningful distinction between a parking and a moving violation. *See United States v. Choudhry*, 461 F.3d 1097, 1103-04 (9th Cir. 2006) (concluding parking violation provided reasonable suspicion for stop even in state where parking violations are enforced through civil-administrative scheme); *Flores v. City of Palacios*, 381 F.3d 391, 402-03 (5th Cir. 2004) (parking violation gave officer authority to stop under *Whren*); *United States v. Copeland*, 321 F.3d 582, 594 (6th Cir. 2003) (same); *United States v. Thornton*, 197 F.3d 241, 248 (7th Cir. 1999) (same). We need not reach the issue, however, because, as discussed below, we conclude the police did not have a reasonable suspicion that Spinner was armed and dangerous so as to authorize the search of his vehicle.

B.  The Search

As we have recently explained, under *Terry* "a police officer may perform a protective frisk if he has reason to believe, based on 'specific and articulable facts ... taken together with rational inferences from those facts,' that 'he is dealing with an armed and dangerous individual.'" *United States v. Holmes*, 385 F.3d 786, 789 (D.C. Cir. 2004) (quoting *Terry*, 392 U.S. at 21, 27). Under the *Terry* 'stop and frisk' exception to the fourth amendment requirement of probable cause, the police may also search those areas of an automobile in which "a weapon may be placed or hidden." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Spinner therefore argues that because "[c]ar frisks under *Long*, like *Terry* frisks in general, are not automatic but are justified only when the police have a reasonable fear that

the individual being detained is 'dangerous' and 'may gain immediate control of weapons[,' *Long*, 463 U.S. at 1049,]" in this case "the facts did not establish grounds for opening the closed console drawer." More particularly, Spinner contends there was no objectively reasonable basis for the officers to believe he was armed and dangerous; he did not make any movements that suggested he was either armed or dangerous, and mere nervousness does not justify the inference that he was. The Government responds that the totality of the circumstances — namely, Spinner's furtive movement in the truck, his explanation that he was going to move the truck although he had gotten into the back seat, and his leaving the door of the truck open when he got out, together with his nervousness — created an objectively reasonable fear that Spinner had secreted a weapon in the Tahoe.

The district court concluded Spinner gave the police reason to believe he was armed because he dipped his shoulder toward the center console while he was in the truck, left the door of the truck open when he got out and, while the police were searching the truck, kept looking into it and asking the police why they were searching it. Although the court recognized that Spinner's conduct was less suspicious than that of the defendant in *Holmes* — who had admitted he had been drinking and, after the police had specifically directed him not to, repeatedly reached for his pocket, 385 F.3d at 790 — the court concluded there was "enough here to justify the officers['] reasonable concern for their safety," albeit "barely enough."

We do not see how the officers' safety was implicated at all by Spinner's conduct. By their own account Spinner, while in the rear seat of the truck, looked as though he might have been fiddling with the center console, after which he got out of the vehicle leaving the door open and acted nervous when the police asked for consent to search the vehicle. These are the

cognizable facts.[*] And there is a logical gap between those facts — which support only the inference that Spinner may have put something (perhaps contraband) in his truck — and the conclusion that the police were "dealing with an armed and dangerous individual." *Holmes*, 385 F.3d at 789 (internal quotation marks and citation omitted).

Some additional fact is needed to get from the defendant's conduct (or his nervousness) to his likely being dangerous. In *Holmes* the officers had twice observed the defendant put his hand under his car seat, 385 F.3d at 787-88, so when Holmes, once out of the car, reached for his pocket and, after having been told not to do so, reached for his pocket again, a prudent officer could reasonably infer that Holmes may have armed himself when he had put his hand under the car seat. *See Holmes*, 385 F.3d at 787-88, 790 (concluding officer acted reasonably in removing from Holmes's jacket pocket a "hard, square object," which turned out to be a scale); *see also Long*, 463 U.S. at 1050 (hunting knife visible in interior of car, among other facts, gave officers reasonable belief defendant was armed and dangerous).

---

[*] To the extent (which is not clear from the record) the district court may have relied upon Spinner's nervous reaction when asked for consent to search his truck or thereafter when the search was taking place, we note that a search not justified when it is begun cannot be used to elicit evidence with which to justify the search after the fact. *See United States v. Di Re*, 332 U.S. 581, 595 (1948) ("[A] search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success.") (footnote omitted); *United States v. Carter*, 985 F.2d 1095, 1097 (D.C. Cir. 1993) (constitutional right to deny or withdraw consent to a search "would be of little value if the very fact of choosing to exercise that right could serve as any part of the basis for finding the reasonable suspicion that makes consent unnecessary").

In this case, the police had already determined Spinner did not have anything dangerous on his person when they frisked him — with his consent. The officers suspected he put something in his truck but they had no reason whatsoever to believe it was a weapon. Therefore, when he denied them further consent to search his vehicle, the encounter should have ended.

We recognize that "traffic stops may be dangerous encounters," *Maryland v. Wilson*, 519 U.S. 408, 413 (1997), and that "[a]pproaching a stopped car — particularly when there is reason to believe the driver or occupants may be armed — is one of the more perilous duties imposed on law enforcement officers," *Holmes*, 385 F.3d at 791. Still, the suspicion that someone is armed — or, in this case, might have a weapon available in his vehicle — must be based upon something more than his mere nervousness. A person stopped by the police is entitled to be nervous without thereby suggesting he is armed and dangerous or, indeed, has anything to hide. Were nervous behavior alone enough to justify the search of a vehicle, the distinction between a stop and a search would lose all practical significance, as the stop would routinely — perhaps invariably — be followed by a search. We do not read *Long* to reach so broadly into the rights of motorists to be free of searches based upon less than probable cause.

## III. Conclusion

We assume without deciding that Spinner's parking violation justified, as would a moving violation, the police in stopping him pursuant to *Terry*. We then hold the facts of this case do not reasonably suggest that Spinner was armed or otherwise a threat to the safety of the officers who stopped him and therefore their search of Spinner's truck was unlawful even if the stop was lawful. Spinner's motion to suppress physical

evidence therefore should have been granted. Accordingly, the record is remanded to the district court and the judgment of that court is

*Reversed.*