# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 11, 2008          Decided March 27, 2009

No. 06-3093

UNITED STATES OF AMERICA,
APPELLEE

v.

CARROLL WASHINGTON, ALSO KNOWN AS WAYNE WATSON,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00344-01)

---

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender.

*Stratton C. Strand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III*, Assistant U.S. Attorney.

Before: GINSBURG, GARLAND and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: On a May night in 2004, a District of Columbia High Impact Tactical police team operated an "aggressive traffic patrol" in a crime-plagued neighborhood in Southeast Washington. The officers sought to detect illegal drug and gun crimes; to advance that goal, they would stop cars when they observed traffic violations and then look for suspicious behavior by the driver or passengers.

When the police saw Carroll Washington run a stop sign, they pulled over his vehicle. After noticing Washington reach toward the floorboard, as well as other suspicious behavior, the officers ordered him to get out and then searched the car. *See Michigan v. Long*, 463 U.S. 1032 (1983); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977); *Terry v. Ohio*, 392 U.S. 1 (1968). The officers uncovered a loaded gun near where Washington had moved his hand. After arresting Washington, they also found $6840 on his person and 795 pills of ecstasy in the car. Washington was convicted and sentenced to 16 years and 8 months in prison.

On appeal, the sole question presented is whether the search of the car violated the Fourth Amendment. To begin with, the Government correctly says the officers' actual subjective motives – detecting drug and gun crimes – are irrelevant to the Fourth Amendment analysis of the traffic stop and protective search of the car. *See Whren v. United States*, 517 U.S. 806 (1996). The Fourth Amendment test is objective. Therefore, when the police have an objectively reasonable basis to conduct a traffic stop for a suspected moving violation (as they concededly did here) and possess or develop an objectively reasonable fear that the driver may be armed, the officers may frisk the driver and search the car. In

this case, the Government contends that the officers possessed an objectively reasonable fear that Washington might be armed because Washington suspiciously reached toward the floor of the car, he lied to police about why he had done so, he appeared extremely nervous and was sweating profusely, he repeatedly looked back over his shoulder at one of the officers, and the neighborhood was a high-crime area. We agree with the Government's position, and we affirm the judgment of the District Court.

I

According to testimony at the suppression hearing, District of Columbia police sometimes conduct "aggressive traffic patrols" and use routine traffic stops to try to detect and prevent drug and gun crimes. Tr. of Mot. Hr'g 24:3-15, Jan. 21, 2005. On May 28, 2004, several officers from one of the Police Department's High Impact Tactical teams employed that procedure in a Southeast Washington neighborhood known for narcotics trafficking, shootings, and homicides.

At 9:30 p.m. that night, a member of the police team saw Carroll Washington run a stop sign. The officer radioed ahead to other officers to pull over Washington's car. Officers Teixeira and Dailey then did so.

When Officer Dailey approached the driver's side window, he observed Washington talking on his cell phone. Officer Dailey told Washington to end his call. Complying with Officer Dailey's instruction, Washington placed the phone on the passenger seat next to him. Washington appeared extremely nervous and was sweating profusely. He repeatedly glanced over his right shoulder at Officer Teixeira. Officer Teixeira found that to be unusual because people usually "focus most of their attention to the officer actually conducting the traffic stop." *Id*. at 17:2-5.

Officer Dailey returned to his police car to check the status of Washington's license and registration. While Officer Dailey was in his cruiser, Officer Teixeira saw Washington "reach underneath his driver's seat" and "make some type of motion up by his feet in the floorboard area." *Id.* at 18:6-9. Officer Teixeira so informed Officer Dailey. After going back to Washington's car, Officer Dailey asked Washington why he had reached under the seat. Washington claimed that he had dropped his phone to the floor and then picked it up. The officers did not believe Washington because they had earlier seen him put the phone on the passenger seat.

The officers ordered Washington out of the car, as permitted under *Pennsylvania v. Mimms* during any traffic stop. 434 U.S. 106, 111 n.6 (1977); *see also United States v. Bullock*, 510 F.3d 342, 344-45 (D.C. Cir. 2007). Officer Dailey then searched the car to ensure that Washington did not have a weapon. *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Officer Dailey found a loaded gun under the driver's floor mat near where Officer Teixeira had seen Washington move his hand. The officers arrested Washington and searched his person, finding $6840 in cash. Later, at the police station, the officers conducted a more extensive search of the car and uncovered 795 pills of ecstasy.

A jury convicted Washington of one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of possession with intent to distribute ecstasy in violation of 21 U.S.C. § 841(a)(1). The District Court sentenced him to 16 years and 8 months of imprisonment.

On appeal, Washington contests the District Court's decision to admit the evidence seized from his car and from

his person. He argues that the police did not possess sufficient justification under Fourth Amendment precedents to search his car during the routine traffic stop. We review de novo the District Court's conclusion that the search was reasonable.

## II

The Supreme Court and this Court have repeatedly recognized that a car stop is "one of the more perilous duties imposed on law enforcement officers." *United States v. Holmes*, 385 F.3d 786, 791 (D.C. Cir. 2004). Because of that inherent danger, police may order the driver and passengers out of the car during a traffic stop. *See Maryland v. Wilson*, 519 U.S. 408, 413 n.1 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977); *United States v. Bullock*, 510 F.3d 342, 344-45 (D.C. Cir. 2007). In addition, the police may frisk the driver and search the car when officers possess or develop a "reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The reasonableness of a frisk and car search during a stop depends on "'whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* at 1050 (quoting *Terry*, 392 U.S. at 27).[*]

In this case, a number of factors would have led reasonable officers to fear for their safety during the stop. Officer Teixeira saw Washington move his hand and body as

---

[*] Some suspected crimes, by their nature, justify police in fearing that the suspect may be armed and dangerous. *See Bullock*, 510 F.3d at 347 (collecting cases).

if to reach under the seat – a movement reasonably suggesting, given the circumstances, that Washington might be concealing or retrieving a weapon. "It is well settled that an individual's furtive movements may be grounds for reasonable suspicion and fear, justifying a *Terry* stop and search." *United States v. Brown*, 334 F.3d 1161, 1167 (D.C. Cir. 2004); *see also Bullock*, 510 F.3d at 348; *Holmes*, 385 F.3d at 788-90; *United States v. Edmonds*, 240 F.3d 55, 61 (D.C. Cir. 2001); *United States v. Mitchell*, 951 F.2d 1291, 1296 (D.C. Cir. 1991); *United States v. Moore*, 554 F.2d 1086, 1088 (D.C. Cir. 1976); *United States v. Green*, 465 F.2d 620, 623-24 (D.C. Cir. 1972); 4 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 9.6(a) at 628-29 (4th ed. 2004). In addition, when the officers asked Washington about his reaching movement, they did not believe his answer because they had earlier seen him place his cell phone on the passenger seat. Washington's statement – which the officers reasonably believed was false – increased the officers' fear that he might have a weapon. *See United States v. Smith*, 614 F. Supp. 25, 28 (D.D.C. 1984) (Hogan, J.) ("furtive movements" together with "the fabrication for the reason for being illegally parked" provided reason for officers to fear for their safety). Officer Teixeira testified, moreover, that Washington was extremely nervous, sweating excessively, and behaving oddly during the encounter – all of which suggested something was afoot. *See, e.g.*, *Brown*, 334 F.3d at 1167-68. Finally, the stop occurred in a high-crime area – a fact that we have found significant in previous car search cases. *See, e.g.*, *Bullock*, 510 F.3d at 348; *United States v. Edwards*, 424 F.3d 1106, 1108 (D.C. Cir. 2005).

The facts in this case – the totality of the circumstances – are *sufficient* under our precedents to demonstrate the reasonableness of the protective frisk and car search. In so concluding, we of course do not mean to imply that any or all

of the above facts are *necessary* to justify a protective frisk and car search during a traffic stop.

## III

In response, Washington relies primarily on *United States v. Spinner*, 475 F.3d 356 (D.C. Cir. 2007). In *Spinner*, the police searched a car based on nothing other than the suspect's nervousness and a "fiddling" movement with his hand. *Id*. at 359. Consistent with our prior decisions, we said that "the suspicion that someone is armed – or, in this case, might have a weapon available in his vehicle – must be based upon something more than his mere nervousness." *Id.* at 360. We explained that a person "stopped by the police is entitled to be nervous without thereby suggesting he is armed and dangerous or, indeed, has anything to hide." *Id.* We further stated: "The officers suspected he put something in his truck *but they had no reason whatsoever to believe it was a weapon*." *Id.* (emphasis added). Washington's reliance on *Spinner* is misplaced. Unlike in *Spinner*, Washington's suspicious movement of reaching toward the floorboard could have been an act of retrieving or concealing a weapon; in addition, as discussed above, a variety of other facts in this case justified the officers' reasonable fear for their safety.

On a different tack, Washington argues that the officers' justification for the original stop ceased when they determined that his license and registration were valid – in other words, that the basis for the stop ended *before* the officers searched the car. But we have stated that the police's concern for safety during a traffic stop ordinarily does not terminate until the officers allow the driver to depart. *See United States Bullock*, 510 F.3d 342, 348-49 n.1 (D.C. Cir. 2007). The Supreme Court recently confirmed this commonsense principle. *See Arizona v. Johnson*, 129 S. Ct. 781, 788 (2009) ("Normally, the stop ends when the police have no further

need to control the scene, and inform the driver and passengers they are free to leave.").

Finally, Washington contends that "the officers' motives, and the fact that this [stop] was purely pretextual should give this Court some pause in considering the officers' explanations for what [they were] in fact doing." Tr. of Oral Arg. at 23:15-18, Dec. 11, 2008. As Washington correctly points out, the officers here were not interested in enforcing the traffic laws. Indeed, the officers involved in the stop apparently were not even using traffic-ticket books to issue tickets. Tr. of Mot. H'rg at 33:18-34:10, Jan. 21, 2005. Rather, the police were performing an "aggressive traffic patrol" – looking "for moving violations, tag violations, reasons to pull vehicles over" – because, as Officer Teixeira testified, "that's normally how we get a lot of our narcotics and gun arrests." *Id.* at 24:3-14.

But Washington's suggestion that we consider the officers' actual motives runs afoul of *Whren v. United States*. There, the Supreme Court held that an officer who possesses an objective basis to stop a motorist for a suspected traffic violation may do so regardless of the officer's subjective motive. *Whren v. United States*, 517 U.S. 806, 810-13 (1996). *Whren* exemplifies the broader principle that courts analyze searches and seizures based on what an objectively reasonable officer could have believed and done, not what the officers subjectively thought. In light of the Supreme Court's precedents, we cannot accept Washington's invitation to decide this case based on the officers' actual subjective motives. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) (in assessing validity of frisk, "it is imperative that the facts be judged against an objective standard"); *United States v. Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005) ("officers' actual motives for conducting the search are not relevant as long as their actions were objectively reasonable") (internal quotation

marks and alterations omitted); *United States v. Holmes*, 385 F.3d 786, 790 (D.C. Cir. 2004) ("The propriety of a search under the Fourth Amendment depends on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's own subjective intent in executing the search.") (internal quotation marks and citation omitted).

\* \* \*

The police search of Washington's car was reasonable under the Fourth Amendment. We affirm the judgment of the District Court.

*So ordered*.